**NOT RECOMMENDED FOR PUBLICATION**
File Name: 08a0121n.06
Filed: February 27, 2008

Nos. 07-5002; 07-5003

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,      )
         )
    Plaintiff - Appellee,      )
         )
v.      )
         )  **ON APPEAL** FROM THE UNITED
RICHARD DANIEL JOHNSON AND    )  STATES DISTRICT COURT FOR THE
MARCUS ANTHONY JOHNSON,    )  EASTERN DISTRICT OF KENTUCKY
         )
    Defendants - Appellants.    )
         )
         )
         )
         )
         )

**BEFORE:**    **Merritt, Rogers, and McKeague, Circuit Judges**

    **MERRITT, Circuit Judge.**  The defendants, Marcus and Richard Johnson, appeal their convictions by challenging the district court's denial of their motions to suppress evidence seized from the defendants during a traffic stop. There are two issues we must decide. The first is whether there was the requisite reasonable suspicion to justify an investigative detention and the second is whether the drug dog was reliable so that its alert would establish probable cause. Because we find that the detention was supported by reasonable suspicion and the drug dog was reliable, we uphold the district court's opinion, and affirm the defendants' convictions.

During the summer of 2005, the Lexington Police Department assigned extra patrols, including Officer Ricky Lynn, to Kenton Street, Lexington, Kentucky, because the Department was experiencing persistent problems with illegal drug activity in the area. In the course of his patrol, Lynn routinely checked tag numbers on cars parked on Kenton Street. On October 10, 2005, Lynn observed a car parked on Kenton Street in front of the Denning's residence, a Habitat for Humanity house that Lynn associated with drug activity. The computer check of the car's tags revealed they were expired. The following day, October 11, 2005, Lynn observed the same car as it drove past him while he was parked close to Kenton Street. After confirming the tags were still expired, Lynn pulled the car over at 10:26 a.m. The defendants do not dispute the validity of the traffic stop.

The car's occupants included defendant Marcus Johnson, the driver of the car, and defendant Richard Johnson, a passenger. After approaching the car and speaking with its occupants regarding the car's ownership, insurance, and registration, Lynn returned to his police car and called for a canine unit. Lynn testified that he called the canine unit because he believed criminal activity might be afoot based upon the following reasons: he recognized Richard Johnson, the passenger, as having a prior drug arrest and Lynn saw the car the day before the arrest parked in front of the Denning's residence[1], a home he associated with drug activity. His concern about the Denning residence resulted from its location in a high-drug-trafficking area, his belief that a prior drug arrest had taken place on the house's porch, a conversation he had with Mr. Denning, who allegedly explained that

---

[1]Yvonne Denning and her husband James Denning co-own the home in question. The defendants are the sons of Yvonne Denning's sister, Erica James. There is no indication in the record that Officer Lynn knew about the defendants' relationship to the owners.

his wife's family was responsible for any drug activity occurring at that location, and his conversations with Habitat for Humanity about it possibly reclaiming the house due to the drug activity occurring there. Additionally, Lynn indicated in his case report that the defendant's car was "usually" parked in front of the Denning home.

After calling the canine unit, Lynn began writing two citations. He returned to the car once while writing the citations in order to clarify some discrepancies. According to Lynn, the canine unit arrived prior to his completion of the second citation. Officer Chris Bryant, a dog handler for narcotic detection dogs, responded to Lynn's call. Upon arriving at the scene, Bryant had a brief discussion with Lynn and the two defendants were removed from the car and instructed to sit on the sidewalk. Almost immediately after being presented to the car, the dog alerted to the rear passenger door. Consequently, Bryant and Lynn searched the car and discovered drugs in the car and on the defendants. Subsequently, Marcus and Richard Johnson were arrested.

Both defendants filed motions to suppress any and all evidence unlawfully seized from them. After a hearing, the district court denied the defendants' motions. Following the district court's ruling, the defendants entered conditional guilty pleas to count two of the indictment, reserving their right to appeal the district court's denial of their motions to suppress.

The facts underlying the reasonable suspicion inquiry in this case can be divided between those that linked the car to a home associated with drug activity and those facts involving Richard Johnson's prior criminal history. Regarding the car's location, this Court's prior holdings state that contextual considerations, such as encountering an individual in a high-crime area, are "relevant to the reasonable suspicion calculus" but alone cannot "give rise to reasonable suspicion." *United*

*States v. Caruthers*, 458 F.3d 459, 467 (6th Cir. 2006). In *Caruthers*, the Sixth Circuit found reasonable suspicion existed when an individual, whose appearance and location matched the description given in an anonymous call, fled and made furtive movements when he was approached by the police at night in a high-crime area. *Id.* at 468. Although the Court found that the contextual considerations supported the detention, it cautioned against relying too heavily on these factors. *See id.* at 467 (discussing the dangers of relying on contextual factors including concerns about racial, ethnic, and socioeconomic profiling). The Court's concerns were alleviated in that case because the "high-crime" area was "circumscribed to a specific intersection rather than an entire neighborhood" and "the crimes that frequently occur[red] in the area [were] specific and related to the reason for which [the defendant] was stopped." *Id.* at 468. Similarly, Officer Lynn testified that his concern was primarily limited to a particular home in the area that was associated with drugs, the same issue for which he pulled over the defendants. Additionally, Officer Lynn had personal knowledge from his conversations with Mr. Denning that drug activity was occurring in and around the home. Lynn's repeated conversations with Habitat for Humanity about ongoing drug issues with the home and his contact with Mr. Denning gave him sufficient cause to associate the home with drug activity. Further, he believed a prior drug arrest had occurred at that home. The defendants' car was linked to the home in that it had been parked there the day before the traffic stop and it was usually parked there. Consequently, Officer Lynn could reasonably conclude that the car's occupants had a connection to a home he specifically associated with drug trafficking.

The second factor was Richard Johnson's presence in the car and Officer Lynn's belief that Johnson had a prior drug arrest. The Sixth Circuit, when addressing past criminal history,

determined that this factor is relevant but "this fact, by itself, does not create a reasonable suspicion that criminal activity is *currently* afoot, which is what the Supreme Court requires." *Joshua v. DeWitt*, 341 F.3d 430, 446 (6th Cir. 2003) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) (emphasis in original). Richard Johnson's criminal background was particularly probative in this case because it involved drugs, the same issue which concerned Officer Lynn at the time of the traffic stop. We believe these facts are sufficient to give rise to reasonable suspicion at the time that Officer Lynn called the canine unit.

Accepting the defendants' time line, the duration of the stop was sufficiently limited to the amount of time necessary for Officer Lynn to assess whether the defendants possessed drugs. The traffic stop began at 10:26 a.m. and the defendants' mother testified that when she arrived on the scene, which was no later than 11:11 a.m., the search had concluded and the defendants had been arrested. Despite this testimony, defendants contend the drug sniff might have occurred as late as 11:20 a.m. The record reflects that Officer Lynn was filling out citations at 10:37 a.m. for the traffic violations. This is the earliest point that one could measure the additional time that the defendants were detained. Consequently, the defendants were detained for forty-three minutes, at most. We find that a forty-three minute traffic stop is a reasonable period of time to allow police to contact a canine unit, wait for its arrival, and have a dog check for the presence of narcotics. *See United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (finding a thirty to forty-five minute detention after the initial traffic stop a reasonable period).

Further, there is no evidence that suggests that Officer Lynn was not diligent in pursuing his investigation. He contacted the canine unit immediately upon returning to his car following his

initial conversation with the defendants. This Court has repeatedly upheld the use of a well-trained drug-sniffing dog as a permissible means of determining whether the defendants were in possession of narcotics. *See id.* at 355.

The defendants also claim on appeal that the district court erred in concluding that the dog's alert established probable cause to search the defendant's car because the government allegedly failed to establish the dog's reliability. "A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994). In order for a dog's alert to support a determination of probable cause, "the training and reliability of the dog must be established." *Id.* at 394.

The district court found there was probable cause for the arrest because it found the dog, Buck, reliable. The court discussed the dog's history and made the following relevant findings: Buck was trained in Indiana and certified with Detective Ray. Later transported to the Lexington Police Department, Buck became the domain of Officer Bryant. Trained by the Lexington Police Department, Bryant spent five 40-hour weeks with the dog under the supervision of the Department's trainer, Officer Whittlesey. After the initial five weeks, Bryant trained and continues to train Buck one day weekly with supervisory training. The Lexington Police Department has an internal requirement that any dog working as a narcotics dog cannot remain active if he has too many false-positives, meaning alerting when there are no drugs. Although the district court acknowledged that some false-positives occurred during the first five weeks, it found that since Buck has never been removed from the field, his level of false-positives must not have reached an impermissible level. Buck's relatively short time in the field, two to three months before the arrest, did not negate the

dog's reliability. When Buck alerted on the car, he did so immediately and with a three-step process: first, he made a "head change" which is a surprised movement of the head, second, he zeroed in on the source, and third, he sat down. Accordingly, the court found that Buck "was well trained," reliable, and that he alerted properly.

In *Diaz*, the court reviewed the district court's findings regarding training and reliability and found they were not clearly erroneous. 25 F.3d at 396. While training and performance documentation are useful for a court's evaluation of a dog's reliability, the Court found that "testimony is sufficient to establish a dog's reliability" and therefore the dog handler's testimony can establish reliability. *Id.* Further, although Officer Bryant testified that false-positives occurred during Buck's training, the Court in *Diaz* found that "a very low percentage of false positives is not necessarily fatal to a finding that a drug detection dog is properly trained and certified." *Id.* No evidence suggests that the district court's findings are clearly erroneous and the only evidence that weighs against a finding of reliability, some false-positives and heavy reliance on the dog handler's testimony, has previously been found non-fatal to a dog's reliability.

For the foregoing reasons, we AFFIRM the judgment of the district court.