# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

   v.

MARCIAL AVILA-ANGUIANO,
    *Defendant-Appellant.*

No. 09-10160

D.C. No.
2:04-cr-00594-
ROS-3

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
April 15, 2010—San Francisco, California

Filed July 13, 2010

Before: Andrew J. Kleinfeld, A. Wallace Tashima and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Thomas

**COUNSEL**

Dennis K. Burke, John R. Lopez IV, Joan G. Ruffennach, United States Attorney's Office, Phoenix, Arizona, for the plaintiff-appellee.

Jon M. Sands and Saul M. Huerta, Jr., Federal Public Defender, Tucson, Arizona, for the defendant-appellant.

---

**OPINION**

THOMAS, Circuit Judge:

This appeal presents the question, *inter alia*, as to whether U.S.S.G. § 2K2.4(b) refers to the statute in effect at the time the crime was committed or the one in effect at the time of sentencing. Under the circumstances presented by this case, we conclude that the statute in effect at the time that the crime was committed is the proper one to apply. We affirm the judgment of the district court.

I

On May 9, 2004, police officers in Phoenix were contacted by the Las Vegas Metro Police Department and advised of a hostage case in the Phoenix area. According to Las Vegas police officers, a person reported that he had received a telephone call several days earlier from an unknown male stating that he was an alien smuggler in the Phoenix area and was holding three of the subject's relatives hostage. The smuggler demanded immediate payment of six thousand dollars and threatened to kill the hostages if payment was not received. The person was instructed to call the smugglers back when he obtained the money. Thereafter, several times a day, the reporting party received phone calls demanding the money. The reporting party indicated he had talked to the three vic-

tims on the telephone and they indicated they were fed only once per day and were not given water. The victims were not aware of the location where they were being held. The relative contacted the police. Phoenix police turned the matter over to immigration officials.

Immigration agents contacted the reporting party in Las Vegas and arrangements were made for him to travel to Phoenix. The reporting party arrived in Phoenix on the evening of May 9, 2004, and a recorded telephone call was made to the smugglers. During the call, the smugglers agreed to lower the fee to $3,000 and agreed to meet the following morning. The smugglers advised they were holding over twenty aliens, had four gunmen, and were located in the area of 67th Avenue and Camelback Road.

On May 9, 2004, members of the Phoenix Special Assault Unit and immigration agents forcefully entered the home at 8801 W. Campbell Road in Phoenix. Eleven people were found huddled together in the back yard of the residence. Among the eleven people were the three relatives of the reporting party.

The residence was secured and a search warrant was obtained and subsequently executed. Agents recovered a 7.62mm assault rifle, a loaded magazine, and 28 rounds of ammunition, miscellaneous documents, 97 rounds of 9mm Luger ammunition, and a cellular telephone.

Subsequent interviews of the illegal aliens held at the residence identified Avila-Anguiano. According to the interviews, he answered the phones and made threats to the families of the aliens being held. He carried a gun and acted as security to make sure nobody left the room.

On March 5, 2005, a grand jury returned a six-count superseding indictment against Avila-Anguiano, charging him with conspiracy to commit hostage taking in violation of 18 U.S.C.

§ 1203 (Count 1), hostage taking, in violation of 18 U.S.C. § 1203 (Count 2), use and carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 3), and three counts of bringing illegal aliens into the United States, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) (Counts 4-6). ER 22-25. Avila-Anguiano proceeded to trial and was convicted on all counts.

On May 17, 2006, the district court entered final judgment and sentenced Avila-Anguiano to 180 months' imprisonment. The sentence consisted of a 120 month sentence as to Count 3, with that sentence to run consecutive to the 60 month sentence for the remaining counts, and those counts running concurrent with each other. Avila-Anguiano was also sentenced to concurrent terms of supervised release of five years on Counts 1-3, and three years on Counts 4-6, and a special assessment of $600.00. Avila-Anguiano appealed.

On appeal, Avila-Anguiano challenged his convictions on Counts 2-6. This Court found the jury instruction relating to the charge of bringing illegal aliens to the United States for financial gain (Counts 4-6) was plainly erroneous, and that the erroneous instruction affected defendant's substantial rights. The court exercised its discretion to correct the plain error, reversed Counts 4-6 and remanded for a new trial. *See United States v. Avila-Anguiano*, 248 F. App'x 823 (9th Cir. 2007).

On remand, Counts 4-6 were dismissed on the Government's motion. Avila-Anguiano filed an unopposed motion for a new sentencing hearing and a new presentence report, which the district court also granted. A draft presentence report stated that under the United States Sentencing Guidelines (U.S.S.G.) Section 2K2.4(a)(2), the guideline sentence for Count 3 was the minimum term of imprisonment required by the statute, which, under 18 U.S.C. § 924(c)(1)(B)(i) (2004), was not less than ten years.

Avila-Anguiano filed a Sentencing Memorandum objecting to, among other things, the sentence as to Count 3 being

incorrect under the Guidelines. After an extensive sentencing hearing, the court agreed with the Government and ruled that it lacked jurisdiction to resentence Avila-Anguiano on Count 3. Alternatively, it ruled that the ten-year mandatory minimum sentence imposed under 18 U.S.C. § 924(c)(1), for conduct occurring in 2004, survived the expiration of the semiautomatic weapons ban. The court sentenced Avila-Anguiano to 166 months, consisting of concurrent 46-month terms of imprisonment on Counts 1 and 2, and a consecutive 120-month term of imprisonment on Count 3, in addition to a special assessment of $300 and concurrent terms of five years of supervised release on Counts 1, 2, and 3. Avila-Anguiano filed a timely notice of appeal.

We review whether a district court has jurisdiction to resentence a defendant de novo. *United States v. Ruiz-Alvarez*, 211 F.3d 1181, 1184 (9th Cir. 2000). The legality of a sentence is reviewed de novo. *United States v. Guzman-Bruno*, 27 F.3d 420, 422 (9th Cir. 1994). The district court's interpretation and application of the United States Sentencing Guidelines is reviewed de novo. *United States v. Upshaw*, 226 F.3d 1101, 1102 (9th Cir. 2000). It is procedural error for the district court improperly to calculate the sentence under the U.S.S.G. *United States v. Tankersley*, 537 F.3d 1100, 1109-10 (9th Cir. 2008).

II

**[1]** Contrary to Avila-Anguiano's assertion, the district court had jurisdiction on remand to re-examine the sentence. "When a defendant is sentenced to multiple counts and one of them is later vacated on appeal, the sentencing package becomes 'unbundled.' The district court then has the authority 'to put together a new package reflecting its considered judgment as to the punishment the defendant deserve[d] for the crimes of which he [wa]s still convicted." *Ruiz-Alvarez*, 211 F.3d at 1184 (citing *United States v. McClain*, 133 F.3d 1191, 1193 (9th Cir. 1998)). Such "unbundling" is often warranted

because conviction on the reversed counts may have affected the remaining counts. *See McClain*, 133 F.3d at 1194 (resentencing on underlying offense was proper where a § 924(c) conviction was reversed; vacation of the § 924(c) sentence unbundled the sentencing package and allowed the district court to put together a new package based on the change in circumstances). The district court had jurisdiction to reexamine the sentence on Count 3, the § 924(c) conviction.

## III

The district court sentenced Avila-Anguiano to 120 months for the 924(c) conviction because that was the punishment for using a semi-automatic weapon in the statute at the time the offense was committed. Avila-Anguiano argues this was an erroneous application of the U.S.S.G. in place at the time of the original sentencing, and as a procedurally erroneous sentence, should be set aside. *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1053 (9th Cir. 2009).

**[2]** The Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA") added semi-automatic assault weapons to the group of firearms punishable by a mandatory minimum sentence of ten years. Pub. L. No. 103-322, 108 Stat. 1796 (Sept. 13, 1994). Section 110105 of the VCCLEA stated the provisions of the Act relating to assault weapons were to expire ten years from the date of its enactment. *Id.* at 2000. As a result, the ten-year mandatory minimum provision in § 924(c)(1)(B)(i) ceased to apply to semi-automatic assault weapons after September 13, 2004. Thus, when Avila-Anguiano committed the instant offenses in May of 2004, possession of a semi-automatic assault rifle, during and in relation to a crime of violence, was punishable by a mandatory minimum sentence of ten years. After September 13, 2004, a violation of 18 U.S.C. § 924(c)(1) involving a semi-automatic assault weapon was punishable by five, seven, or ten years depending on whether the firearm was pos-

sessed/carried, brandished, or discharged. 18 U.S.C.
§ 924(c)(1)(A)(i)-(iii) (2009).

When Avila-Anguiano was first sentenced on Count 3 in
2006, the applicable guideline, U.S.S.G. § 2K2.4(b), read as
follows: "Except as provided in subsection (c) [inapplicable
here], if the defendant, whether or not convicted of another
crime, was convicted of violating section 924(c) or 929(a) of
title 18, United States Code, the guideline sentence is the
minimum term of imprisonment required by the statute."
U.S.S.G. § 2K2.4(b). In May of 2006, the sections of 18
U.S.C. § 924(c) applicable to Avila-Anguiano read:

> (1)(A) Except as to the extent that a greater mini-
> mum sentence is otherwise provided by this subsec-
> tion or by any other provision of law, any person
> who, during and in relation to any crime of violence
> or drug trafficking crime . . . uses or carries a fire-
> arm, or who, in furtherance of any such crime, pos-
> sesses a firearm, shall, in addition to the punishment
> provided for such crime of violence or drug traffick-
> ing crime—(I) be sentenced to a term of imprison-
> ment of not less than 5 years; (ii) if the firearm is
> brandished, be sentenced to a term of imprisonment
> of not less 7 years.

18 U.S.C. § 924(c) (2006).

Avila-Anguiano argues that nothing in the Sentencing
Guidelines authorizes interpreting cross-references to statutes
as references to the statutes at the time of the offense. Rather,
he argues, a conventional and common reading of U.S.S.G.
§ 2K2.4(b) indicates that the cross-reference is to the statute
as it exists at the time of sentencing, and not some other time.
We disagree.

Congress enacted its first general saving provision, c. 71,
16 Stat. 432 (1871), to abolish the common law presumption

that the repeal of a criminal statute resulted in the abatement of all prosecutions which had not reached final disposition in the highest court authorized to review them. *Warden v. Marrero*, 417 U.S. 653, 660 (1974). "Common-law abatements resulted not only from unequivocal statutory repeals, but also from repeals with re-enactments with different penalties, whether the re-enacted legislation increased or decreased penalties." *Id.* To avoid such abatements, Congress enacted 1 U.S.C. § 109, the general saving clause, which provides in pertinent part that the "repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute." 1 U.S.C. § 109. The Supreme Court thus stated that the determinative question is whether the statute includes a "penalty, forfeiture, or liability" which would be saved from extinguishment by the statute. *Warden*, 417 U.S. at 660. Specifically, the Supreme Court stated the statute applies to "bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense." *Id.* at 661.

**[3]** Congress indicated "an intent to subject to the General Saving Statute all legislation that becomes inoperative upon the occurrence of any legislatively established conditions, whether the passage of time or otherwise." *United States v. van den Berg*, 5 F.3d 439, 444 (9th Cir. 1993). Thus, given its purpose and background, the general savings clause is applicable here. The VCCLEA was a temporary statute that became inoperative upon the occurrence of a legislatively established condition—the passage of ten years from the day of enactment. The termination of the statute, which included a clear penalty for using a semi-automatic weapon during the commission of a crime of violence, ameliorated the criminal penalties for Avila-Anguiano's actions from the ones in force at the time of the commission of the offense. Thus, the general saving statute applies.

We have applied the general saving statute broadly in criminal and civil contexts. *See, e.g.*, *United States v. Garcia*, 877

F.2d 23, 25 (9th Cir. 1989) (holding "special parole" to be a penalty within the meaning of the saving clause, and finding later amendments invalidating special parole therefore did not apply to defendant); *United States v. Van Horn*, 836 F.2d 1236, 1237 (9th Cir. 1988) (applying 1 U.S.C. § 109 to civil penalties and forfeitures in the same manner as to criminal penalties and forfeitures); *United States v. Breier*, 813 F.2d 212, 214-15 (9th Cir. 1987) (holding the federal saving clause barred retroactive application of portion of Firearms Owners' Protection Act which repealed liability to which defendant was subject).

**[4]** In *United States v. Working*, 287 F.3d 801 (9th Cir. 2002), we stated, "In addition, Section 2K2.4 of the Sentencing Guidelines specifically addresses 18 U.S.C. § 924(c), and requires that the defendant be sentenced to the term of imprisonment required by statute. *At the time of the offense*, 18 U.S.C. § 924(c) provided [violators] . . . be sentenced to imprisonment for five years." *Working*, 237 F.3d at 807 (emphasis added) (internal citations and quotation marks omitted). Thus, we have previously assumed the cross-reference in the U.S.S.G. applies to the version of the statute in effect at the time the offense was committed.

The language in *Working*, the extensive application of the general saving clause in this Circuit, and the purpose and background of the Clause all counsel for application of the penalty in place at the time Avila-Anguiano committed the offense.

This reading is also supported by the only other Circuit to have addressed this question. In *United States v. Klump*, 536 F.3d 113, 120-21 (2d Cir. 2008), the Second Circuit upheld the district court's imposition of a ten-year sentence under 18 U.S.C. § 924(c)(1)(B)(i) when the statute was in effect at the time of the offense, even though it expired prior to the sentencing, relying on 1 U.S.C. § 109. "Section 924(c)(1)(B)(i) contains no provision expressly prohibiting its application to

defendants, like Klump, who were convicted of possessing a semiautomatic assault weapon before the statute expired." *Id.*

**[5]** Given the statutory nature of the penalty, and that the general savings clause is explicitly directed at such a situation, we apply the statute in effect at the time the crime was committed, rather than the one in effect at the time of sentencing. Therefore, the district court did not err in sentencing Avila-Anguiano to the ten-year statutory minimum in effect when he committed the offense.

**AFFIRMED.**