**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0672n.06

**No. 08-3597**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 03, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| DEONTAE SWEENEY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

Before:  MARTIN, SUHRHEINRICH, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge**.  After the district court denied Defendant Deontae

Sweeney's motion to suppress evidence seized from his vehicle, Sweeney stood trial on one count

of possession with intent to distribute 50 grams or more of crack cocaine, 21 U.S.C. § 841(a)(1) and

(b)(1)(A).  The jury found him guilty of possession with intent to distribute at least 5 grams, but less

than 50 grams, of cocaine base, 21 U.S.C. § 841(a)(1), (b)(1)(B), and the district court sentenced him

to 262 months in prison.  Sweeney appeals, challenging the denial of his motion to suppress.  We

**AFFIRM**.

**I**

The district court conducted a suppression hearing and found the following facts:

> Cleveland Police Officers Weaver and Goin[e]s were in a zone patrol car in
> the area of Signet, Imperial, East 123rd and East 126th in the City of Cleveland on
> May 14, 2007.  The area is a high complaint area regarding drugs and gang activity.

The officers testified that they observed individuals in the area in question, around the corner of Imperial and East 123rd streets. Officer Goin[e]s testified that he observed what appeared to be a drug transaction – one individual handing another a plastic baggie in exchange for cash. Although he did not immediately recognize Defendant as one of the individuals on the corner, he did see the man he later identified as the Defendant, enter the van in this case.

Officer Weaver testified that he saw three or four men standing in front of a parked vehicle, a green minivan, on Imperial Avenue. Their attention was focused on their hands, an action that signified to the officer, based on his experience, that they were engaged in drug activities. When the men saw the police car, two of the individuals dispersed immediately and quickly walked down East 123rd. The other man got into the vehicle they had been standing in front of and pulled hurriedly away from the curb where he was parked. He did so directly in front of the police vehicle without signaling that he was entering oncoming traffic.

The police car followed the Defendant for a few blocks. The officers called into dispatch the vehicle's license plate number, which returned as registered to the Defendant. Officer Goin[e]s was familiar with the Defendant based on a prior drug arrest and another time when he was the victim of a car theft. He relayed that information to Officer Weaver. The officers pulled Defendant's vehicle over.

Officer Weaver approached the vehicle from the driver's side and asked Defendant for his license and proof of insurance. Defendant was visibly shaking as he handed Officer Weaver his license. Officer Goin[e]s approached the vehicle from the passenger's side and placed his face to the minivan's tinted back, side window to look into it for safety reasons. The officer testified that he saw a Tanqueray bottle tucked into the netting in the back of the front passenger's seat. He informed Officer Weaver of this. Officer Weaver also testified that he saw the liquor bottle, albeit he stated that he noticed it behind the passenger's seat on the floor, leaning against the seat.

Officer Weaver asked Defendant if he had any guns, knives, needles or anything else in the car that could hurt the officer. Describing Defendant's demeanor, Officer Weaver testified that Defendant's shaking became obvious and he was sweating, stammering and stuttering. Defendant was asked to clasp his hands together in front of him. The officers then conversed in the squad car. Upon returning to Defendant's vehicle, Officer Weaver opened the door and asked Defendant to come out of the vehicle. Officer Weaver noticed Defendant move his hands towards his waistband. Concerned that he may have a weapon, the officers attempted to remove Defendant from the vehicle. At that time, the Defendant

appeared to reach back into the vehicle, which raised another safety concern for the officers. At that point, Officer Weaver drew his firearm and placed it in Defendant's side as Defendant was put against the vehicle and told to place his hands on the car. Officer Weaver wrapped his arms around Defendant until Defendant was secured in handcuffs. Defendant was then patted down. Over $1,000 was found on his person.

The officers searched the vehicle and retrieved the liquor bottle. Officer Weaver testified that it smelled like an alcoholic beverage. Defendant was given a ticket for the traffic citation and was arrested for the open container. The officers did an inventory search of the vehicle and discovered a black plastic bag in the glove box which contained a digital scale with crack cocaine residue, two plastic baggies containing approximately 84 grams of crack cocaine, and empty sandwich type baggies.

Sweeney also testified at the suppression hearing, giving a very different account of the events. He testified that he had not been standing on the corner with the other men, but had been inside the convenience store located on that same corner, purchasing a t-shirt and a cigar. After leaving the store, he went directly to his vehicle and left; he did not speak with, or go over to, any of the men gathered there. Sweeney contended that after pulling him over, Officer Weaver approached his minivan, obtained his license, registration and insurance, and then returned to the police car; Officer Goines remained in the police car. Within seconds, Officer Weaver returned to the minivan with his gun drawn. When Officer Weaver found the money in Sweeney's pocket, Sweeney told him that he was on his way to record a rap record and that the money was for the studio. He also showed Officer Weaver a flier for his music with his picture on it. Sweeney testified that he was not shown or told of any evidence that was confiscated from his vehicle, although the police did later tell him he was being charged with an open container violation and failure to yield. Sweeney testified that he knew there was no bottle visible in his vehicle at the time because he had just vacuumed the vehicle. He denied sweating or shaking.

The district court denied Sweeney's motion to suppress from the bench, and later issued a written "order and decision." The court rejected the motion on two grounds, each sufficient alone to support its decision. First, the court concluded that the officers had legitimately stopped the car under *Terry v. Ohio*, 392 U.S. 1 (1968), because they had a reasonable suspicion that Sweeney was engaging in illegal drug activity. The court acknowledged that there were inconsistencies in the officers' accounts, but ultimately found credible their conclusion that they had witnessed the beginning of a drug transaction. The court relied on their testimony that they saw men gathered on the corner exchanging a plastic baggie for money (Officer Goines) and looking down at their hands (Officer Weaver). The court also relied on the fact that after the officers ran the vehicle's license plate and Sweeney's name came back, Officer Goines realized that he had arrested Sweeney for drug activities in the past. The court cited as significant the officers' years of experience patrolling the area in question, their knowledge of complaints of drug activity, and Officer Goines' experience making hundreds of arrests there, 75% of which he estimated were for crack.

Second, the court found that the officers had sufficient cause to temporarily detain Sweeney because he had committed a civil traffic violation by failing to yield. The court noted that Sweeney did not dispute that he pulled away from the curb without signaling and that the state court found Sweeney guilty of the traffic violation.[1] (District court docket #45 8-9.)

---

[1]Sweeney's charges of failure to yield and having an open container in a vehicle were adjudicated in Cleveland Municipal Court. The court held a hearing at which both officers and Sweeney testified. Sweeney was found guilty of the failure-to-yield offense, but acquitted of the open-container offense.

After concluding that the stop of Sweeney's vehicle was legitimate, the court determined that the search of the vehicle was proper. The court concluded that, despite inconsistencies in the officers' accounts of the location of the liquor bottle in Sweeney's vehicle, the officers' testimony was sufficiently consistent to show that they observed the bottle in plain view. That having been established, Sweeney's subsequent arrest for violating open-container laws was legitimate, as was the inventory search performed on the vehicle that yielded the crack.

**II**

Sweeney's arguments on appeal relate only to the stop of the vehicle. He does not challenge the officers' plain-view observation of a liquor bottle behind the passenger seat of his vehicle, or the legitimacy of the ensuing arrest for the open-container violation, pat-down, or search of his vehicle. He does not challenge his sentence. [2]

---

[2]Sweeney's counsel filed a merits brief and Sweeney filed a supplemental memorandum in support of his counsel's brief *pro se*, which generally echoes his counseled brief's arguments concerning the sufficiency and credibility of the officers' testimony. To the extent that Sweeney's *pro se* supplemental memo in support of appellant's attorney, which he filed in August 2009, well before the Fair Sentencing Act took effect on August 3, 2010, could be construed as arguing that he should have been sentenced as if he had dealt in powder cocaine rather than crack, we note that the court granted him a 100-month variance for that very reason. Further, this Court recently held that the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010), does not apply retroactively. *United States v. Carradine*, – F.3d – , 2010 WL 3619799, at *4-5 (6th Cir. Sept. 20, 2010), *petition for reh'g en banc pending*.

In September 2010, Sweeney filed a supplemental authority letter *pro se*, pursuant to Fed. R. App. P. 28(j), calling to our attention *State v. Singleton*, 920 N.E.2d 958 (Ohio 2009). Sweeney asserts that *Singleton* renders void ab initio at least one of the prior state convictions used to sentence him as a career offender. He also notes the passage of the Fair Sentencing Act of 2010, and that although he was charged with possessing 84 grams of cocaine, the jury convicted him by special verdict only of possessing more than 5 but less than 50 grams. Sweeney asserts that the district court's issuance of the special verdict form without a request from him that a lesser offense

Sweeney contends that the officers did not establish that they had sufficient specific, articulable facts to support a reasonable suspicion that he was involved in criminal activity. He argues that the fact that he was present in a neighborhood known for drugs and other illegal activity cannot alone give rise to reasonable suspicion, and he contends that the officers' testimony concerning the men on the street corner and what they were doing is too inconsistent to add sufficient additional support.

We review the district court's denial of Sweeney's motion to suppress under a mixed standard of review. *United States v. Davis*, 430 F.3d 345, 351-52 (6th Cir. 2005). We will reverse the district court's findings of fact only if clearly erroneous, but review *de novo* its legal conclusions. We review the evidence in a light most favorable to the government. *Id.*

A police officer is permitted to briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity has occurred or is about to occur. *United States v. Atchley*, 474 F.3d 840, 847 (6th Cir. 2007). In evaluating whether there was a proper basis for a *Terry* stop, courts examine the totality of the circumstances. *United States v. Smith*, 594 F.3d 530, 537 (6th Cir. 2010).

The district court did not err in concluding that the officers had reasonable suspicion that Sweeney was involved in illegal drug activity. The officers had considerable relevant experience. *See United States v. Flores*, 571 F.3d 541, 544 (6th Cir. 2009) ("While reasonable suspicion must be based

---

instruction be given caused a constructive amendment of the indictment.

The Government moved to strike Sweeney's 28(j) letter. Because Sweeney's letter advances new sentencing claims unrelated to his appeal, we will not consider his claims. *See In re Lewis*, 398 F.3d 735, 748 n.9 (6th Cir. 2005).

on more than ill-defined hunches, officers may draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." (internal quotations and citation omitted)). Officer Goines had nine years of experience in the southeast Cleveland district in which the events took place, had made hundreds of drug arrests (75% of them crack arrests), and had gained familiarity with the ways in which crack cocaine is sold on the street. Officer Weaver had eight years of experience in the relevant district, had made around 200 drug arrests (approximately 90% of them crack arrests), and also professed familiarity with the way crack was sold on the street.

The officers also identified the specific corner at issue as having a large amount of drug activity – businesses at or near the intersection had made a number of drug-related complaints, and officers had made crack arrests in that area. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that the fact that the stop occurred in a high crime area "is among the relevant contextual considerations in a *Terry* analysis"). In addition, two of the houses on the block of Imperial where the events occurred had been the source of complaints regarding drug- and gang-related activity.

In this context, the officers' observations created a reasonable suspicion of illegal drug activity. Officer Goines (the passenger) testified that he and Officer Weaver (the driver) drove up to the intersection of Imperial and East 123rd Street around 3:20 p.m., where he saw a group of males standing at the corner. Goines was ten to fifteen yards away from the men and his view was not blocked. One of the men had money in his hands and the other males looked like they were holding clear plastic baggies. Goines testified that the activity was interrupted when one of the men looked up, saw the marked police car, and immediately departed the area, and the other two men did the same.

*Cf. Wardlow*, 528 U.S. at 124 ("Our cases have . . . recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.") Two of the men walked away to the south, while the third entered a green minivan that was parked on Imperial Avenue, just east of 123rd Street. *Id.* The man in the van was one of the men who appeared to be holding a plastic baggie. Based on his experience and training, Goines thought that he and Officer Weaver had interrupted a drug deal.

Officer Weaver testified that he saw several males gathered in front of a vehicle parked at the corner of Imperial and East 123rd Street. He saw that the men were looking at, and had their attention focused on, their hands, which Officer Weaver stated "was synonymous" with drug activity. Weaver testified that a couple of the males fled southbound after detecting the officers' presence; he was able to identify these two individuals as "kids that live at [or "use"] 12318 Imperial," one of the two gang/drug houses on the street. Weaver stated that a third man from the group turned around, entered the green vehicle, and hurriedly pulled away from the curb.[3] Weaver stated that, based on his knowledge of the area, he believed he had seen criminal drug activity.

In addition, as the officers followed the green minivan down the block (but before they stopped it) they called in the license plate number to dispatch and learned that the car was owned by Deontae Sweeney. Officer Goines knew Sweeney – he had arrested Sweeney for violation of state drug laws (crack cocaine) around February 2004. *Cf. United States v. Johnson*, 267 F. App'x 412, 414-15 (6th Cir. 2008) (unpublished) (fact that police believed suspect had prior arrest is relevant in determination whether there was reasonable suspicion); *Joshua v. DeWitt*, 341 F.3d 430, 446 (6th Cir. 2003) (police

[3]At this point in his testimony, Officer Weaver called the vehicle a "green station wagon." However, he later repeatedly affirmed his counsel's characterization of the vehicle as a "minivan."

awareness of criminal history is a factor that can be considered in determining whether there was reasonable suspicion). Although none of these factors standing alone is sufficient, *see*, *e.g.*, *Wardlow*, 528 U.S. at 124; *DeWitt*, 341 F.3d at 446, under the totality of the circumstances, the officers had reasonable suspicion to stop Sweeney's vehicle. *Smith*, 594 F.3d at 537.

Sweeney accurately observes that the officers' accounts do not match precisely. However, the only discrepancy Sweeney references specifically is the location of the group of males. East 123rd Street runs north-south and intersects Imperial Avenue, an east-west road, at a right angle. Officer Goines testified that the group of men were on the southeast corner of East 123rd Street at Imperial Avenue. Officer Weaver testified that they were gathered in front of Sweeney's vehicle, which was parked on Imperial "at the corner" "within 30 feet of the intersection" with East 123rd. There are other discrepancies as well. Officer Goines observed money and baggies in the hands of the men, but Officer Weaver merely saw the men looking at their hands. Officer Goines testified that the fleeing men went south down East 123rd Street; Officer Weaver also testified that the men went south in the same area, but stated that they went via the driveways of abandoned homes and not on 123rd.

However, the district court found the officers' testimony credible based upon their appearance and demeanor on the witness stand, a conclusion that is entitled to deference on appeal. *See United States. v Navarro-Comacho*, 186 F.3d 701, 705 (6th Cir. 1999). While the district court did not resolve each inconsistency item-by-item, it did explain its confidence in the officers' testimony, noting that such discrepancies indicate that the officers were not engaging in a "conspiracy or fabrication because if there was some sort of fabrication, the testimony would have been more consistent than it

was."[4] *Cf. United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) ("Because the District Court was in the best position to judge credibility, and because that Court plausibly resolved the discrepancies in the testimony, its findings of fact should not be disturbed.")  In addition, at least some of the differences in the officers' accounts (e.g., the more detailed information Officer Goines provided about the possible drug transaction) could reasonably be due to the fact that Officer Goines was the passenger in the patrol vehicle and could freely observe the activities on the corner, while Officer Weaver had driving duties dividing his attention.

In sum, the inconsistencies in the officers' accounts do not overcome the conclusion that the officers had reasonable suspicion of criminal drug activity, and thus, sufficient basis for a *Terry* stop.

Because we affirm the district court's determination that the stop was proper under *Terry*, we need not address Sweeney's claims of error regarding the alternative grounds for upholding the stop.

We **AFFIRM**.

---

[4]The court made this statement in the section of its opinion concerning the officers' sighting of the liquor bottle.  However, in context, it appears to apply to the two officers' accounts as a whole.