UNITED STATES of America

v.

Jackie C. CAMPBELL.

Case No. 1:10–cr–16.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Feb. 11, 2011.

Steven S. Neff, U.S. Department of Justice, Office of U.S. Attorney, Chattanooga, TN, for Plaintiff.

Rita C. Lalumia, Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, TN, for Defendant.

## SENTENCING MEMORANDUM

HARRY S. MATTICE, JR., District Judge.

Presently before the Court are the sentencing memoranda of Defendant [Court Doc. 40] and the Government [Court Doc. 41]. The key question the parties identify and discuss in each of their memoranda is whether the amendments to the mandatory minimum penalties for violations of the Controlled Substances Act codified in the Fair Sentencing Act of 2010 ("FSA") Pub. L. No. 111–220, 24 Stat. 2372 (Aug. 3, 2010) should be apply to Defendant, who committed the crimes for which he pled guilty before the enactment of the FSA, but who pled guilty and is being sentenced after the FSA was signed into law.

For the reasons explained below, this Court **FINDS** that the new mandatory minimum penalties codified in the FSA are **INAPPLICABLE** to Defendant, and thus that Defendant is subject to the statutory mandatory minimum penalties in place at the time he committed his crime.

## I. FACTUAL BACKGROUND

On January 21, 2010, Chattanooga Police Department Officer Daniel Jones swore out a criminal complaint against Defendant Jackie Campbell before Magistrate Judge Susan K. Lee, alleging that Defendant was found in possession of 6 ounces (approximately 170 grams) of crack cocaine and 50 ecstasy pills and thus that he violated 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). [Court Doc. 1, Criminal Compl. and Aff. of Daniel Jones]

On January 26, 2010, the Grand Jury indicted Defendant on one count of possessing with the intent to distribute fifty

(50) grams or more of a mixture or substance containing cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A). [Court Doc. 8, Indictment.]

On September 27, 2010, Defendant entered a plea of guilty on that count before Magistrate Judge Lee, and on October 19, 2010, this Court entered an order granting Defendant's motion to withdraw his not guilty plea, accepting and adopting Magistrate Judge Lee's Report and Recommendations regarding Defendant's guilty plea, adjudging Defendant guilty of the charges in Count One of the Indictment, and setting the matter for consideration of the plea agreement and sentencing on Monday February 7, 2011. [Court Doc. 38].

On January 20, 2011, Defendant filed his sentencing memorandum [Court Doc. 40], and on February 4, 2011, the Government filed its sentencing memorandum [Court Doc. 41]. During the sentencing hearing on February 7, 2011, it became clear that further consideration of the FSA's applicability was merited. Therefore, the sentencing hearing was re-set for February 11, 2011 [Court Doc. 42] and the parties submitted supplemental briefing on the issue on February 9, 2011 [Court Doc. 44, Govt.'s Notice of Suppl. Authority; Court Doc. 45, Def.'s Notice of Suppl. Cases].

This matter is now ripe for consideration.

## II. DISCUSSION

On August 3, 2010, President Barack Obama signed into law the Fair Sentencing Act of 2010 ("FSA"), which is described as "An Act To restore fairness to Federal cocaine sentencing" and which alters the punishment scheme for certain drug-related crimes. Pub. L. No. 111–220, 24 Stat. 2372 (2010). One of the FSA's major effects is "cocaine sentencing disparity reduction," that is, reducing the disparity between the prescribed federal sentences for controlled drug crimes involving equivalent volumes of powder cocaine and crack cocaine—the so-called "crack-to-powder" ratio, previously 100:1 and reduced by the FSA to 18:1. *Id.* at § 2. It achieves this reduction in a number of ways, both by reducing the amounts of crack cocaine necessary to trigger a mandatory minimum sentence and by directing the United States Sentencing Commission to review and amend the Federal sentencing guidelines to reduce the impact of sentence adjustments based "solely on drug quantity." *Id.* at §§ 2–3 and §§ 7–8.

Although it granted the Sentencing Commission "emergency authority" to "promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable, and in any event not later than 90 days after the date of enactment of this Act," it made no similar provisions regarding its other amendments to the penalty scheme. Given this emergency authority, and given that 18 U.S.C. § 3553(a)(4)(A)(ii) mandates that the sentencing guidelines courts are to take into account during sentencing are those "in effect on the date the defendant is sentenced," the sentencing guidelines currently in effect already incorporate the FSA's amendments. This has resulted in the current odd-and, Defendant argues, inequitable—situation wherein a defendant who committed a crime before the FSA was in effect but is sentenced after is subject both to the old mandatory minimum provisions containing a disparity Congress has declared "unfair" and the new sentencing guidelines, applying "fairer" treatment.

Given that applying these changes could effect a significant reduction in a given sentence, numerous motions and appeals were filed in federal courts around the country, ranging from prisoners seeking reconsideration of their sentences to defendants with cases pending appeal seek-

ing a remand to have the new penalty provisions applied to newly-charged defendants seeking a ruling that the FSA amendments applied in their cases.

The United States Court of Appeals for the Sixth Circuit first addressed the FSA's retroactivity in *United States v. Carradine,* 621 F.3d 575 (6th Cir.2010). In that case, the defendant had already been sentenced and was appealing his conviction to the Sixth Circuit when the FSA was enacted into law, at which time the court accepted supplemental briefing on whether the defendant was subject to the old version of 21 U.S.C. § 841, under which he would be subject to statutory minimum penalties, or whether he was entitled to the benefit of the new FSA provisions, under which he would be subject to no such minimum penalties. *Id.* at 580. The Sixth Circuit held that:

> The "general savings statute," 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed, unless the new enactment expressly provides for its own retroactive application. *Warden, Lewisburg Penitentiary v. Marrero,* 417 U.S. 653, 660, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974); *United States v. Avila–Anguiano,* 609 F.3d 1046, 1050 (9th Cir.2010); *United States v. Smith,* 354 F.3d 171, 174 (2d Cir.2003); *Korshin v. Comm'r,* 91 F.3d 670, 673–74 (4th Cir.1996).
>
> The new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language. Consequently, we must apply the penalty provision in place at the time Carradine committed the crime in question. We affirm the district court's imposition of the 60–month mandatory minimum sentence.

*Id.*

In his sentencing memorandum, Defendant urged the Court to follow the reasoning of *United States v. Douglas,* 746 F.Supp.2d 220, 2010 WL 4260221 (D.Me. Oct. 27, 2010), in which Judge Hornby held that "a defendant not yet sentenced on November 1, 2010, is to be sentenced under the amended Guidelines, and the Fair Sentencing Act's altered mandatory minimums apply to such a defendant as well," and distinguished *Carradine* as involving a defendant already sentenced at the time the FSA went into effect.

Although the Court has given this matter substantial consideration, it is unable to agree with the *Douglas* opinion, particularly insofar as it believes *Carradine* is entirely distinguishable from the current situation solely on the basis that *Carradine* involved an already-sentenced defendant. Although the Sixth Circuit did not discuss the FSA's retroactivity in significant depth, nothing in its *Carradine* opinion indicates that its holding is limited to defendants who had already been sentenced at the time the FSA's changes went into effect. In fact, the plain language of the opinion—"we must apply the penalty provision in place *at the time Carradine committed the crime in question*"—indicates precisely the opposite. *Carradine,* 621 F.3d at 580 (emphasis added). The Sixth Circuit not only considered the FSA's effect on the applicable mandatory minimums, but explicitly held that the relevant date was the date of the crime, not the date of sentencing.

Further, this choice of the date of the crime as dispositive was not an offhand statement, but rather the result of reference to longstanding Supreme Court caselaw about the applicability of the general savings statute to the retroactivity of changes in criminal penalties. The *Douglas* opinion relies heavily on Judge Hornby's belief that the intent and structure of the FSA manifests a congressional intent that the statute be applied retroactively, if not expressly, then by "fair implication."

*Douglas*, 746 F.Supp.2d at 230, 2010 WL 4260221 at *5. As authority for the "fair implication" rule of construction, the *Douglas* opinion cites first the United States Supreme Court's opinion in *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465, 28 S.Ct. 313, 52 L.Ed. 567 (1908) for the principle that the savings clause "cannot justify a disregard of the will of Congress as manifested either expressly or by necessary implication in a subsequent enactment," and then Supreme Court's reiteration of that principle in *Warden v. Marrero*, 417 U.S. 653, 659 n. 10, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974), where the Supreme Court cited *Great N. Ry. Co.* when noting that a modern statute would supersede the general savings statute where that statute "can be said by fair implication or expressly to conflict with" the savings statute. *Douglas*, 746 F.Supp.2d at 230, 2010 WL 4260221 at *5.[1] Therefore, Judge Hornby says, "[i]f Congress's action here concerning when the restoration of fairer sentencing is to occur does not satisfy the adverb 'expressly,' interpreting the Fair Sentencing Act to apply to all new sentences is certainly a 'fair implication,' and a 'necessary implication' of what Congress has done. Indeed, it is difficult to see anything as demonstrating a contrary implication." *Id.*[2]

---

1. Judge Hornby also reads *Great N. Ry. Co.* for the principle that "an earlier Congress cannot bind a later Congress," but that does not seem to be relevant here. *Douglas*, 746 F.Supp.2d at 231, 2010 WL 4260221 at *6. The general savings statute is not an historical remnant, it is a duly-enacted law still in force. The Congress that originally passed it did so precisely because it wanted to change the common-law default and so that future Congresses had a codified "default" rule of statutory construction, which rule any subsequent Congress may change.

2. On the other hand, and contrary to the view expressed by Judge Hornby, this Court can discern at least one possible source of a congressional intent that the FSA *not* be applied retroactively: that it explicitly discussed the timing of the implementation of some provisions of the Act and not others. The FSA effects changes not only in the statutorily-required elements of a penalty (i.e. mandatory minimum sentences) but also changes to the more discretionary elements of a penalty (i.e. the sentencing guidelines, which Congress can use to express its belief about the effect certain factors should have on a defendant's sentence, but from which courts are free to depart). Yet the only direction as to the timing of the statute's implementation—the emergency authority delegated to the Sentencing Commission in § 8—was directed solely to the discretionary changes. That Congress took the time to draft a provision explicitly directing the U.S. Sentencing Commission to implement the FSA-mandated changes as soon as possible, but neither abolished or nor explicitly made retroactive the mandatory minimum penalties—penalties which have the force of law, which judges are not free to ignore, and which Congress has the sole authority to alter—yields an implication, at least as plausible as Judge Hornby's, that Congress did not want to (or could not agree to) change the actual nature and scope of the crimes already committed, but rather merely wanted to communicate to the courts its changed preferences as to those factors it believed a court should consider during sentencing as soon as possible.

Further, reducing the disparity between crack and powder cocaine sentences was only *one* of the FSA's goals; the statute also directed the U.S. Sentencing Commission to review and amend the sentencing guidelines to provide harsher penalties for those defendants who targeted more vulnerable classes of individuals; who took more of a leadership role in drug trafficking or production; or who used violence, threats, or witness intimidation as part of their offense. Pub. L. No. 111–220, §§ 5–6, 24 Stat. 2372 (2010). Defendant's argument that the intent ("to increase fairness") and structure—reducing the crack-to-powder disparity in both the mandatory minimum penalties and in the sentencing guidelines—compels courts to make the crack-to-powder changes retroactive reads out of the statute these other changes, which Congress could have thought as, if not more, important to "increasing fairness," but which Congress chose to effectuate only by altering the guidelines, not by altering the substantive nature of the offenses themselves.

Although, again, it did not address this argument in depth, the *Carradine* opinion evinces a clear awareness and application of this "fair implication" principle. The Sixth Circuit not only cited *Marrero* for the principle that "the 'general savings statute,' 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed, unless the new enactment expressly provides for its own retroactive application," but then actually applied that principle by looking for both express and implied statements on retroactivity in the FSA: "[t]he new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive *nor can we infer* any such express intent." *Carradine*, 621 F.3d at 580 (emphasis added). Therefore, although Judge Hornby may disagree with the Sixth Circuit's analysis in *Carradine* and choose to depart from it, this Court neither possesses the liberty to do so, nor feels that such departure is merited here. The Sixth Circuit was aware of the *Marrero* opinion, looked for any implied intent in the FSA to make it retroactive and, upon finding none, determined that the applicable penalty provision is that "in place at the time [the defendant] committed the crime in question." *Id.*

Finally, the extant legal authority around the country regarding this issue does not reveal a clear consensus and, particularly at the appellate level, several courts have reiterated the rule that the dispositive date is the date on which the crime was committed. Two subsequent unpublished Sixth Circuit cases, *United States v. Johnson*, No. 09–2173, 407 Fed. Appx. 8, 12, n. 1, 2010 WL 5395725, *3, n. 1 (6th Cir. Dec. 28, 2010) and *United States v. Sweeney*, No. 08–3597, 402 Fed.Appx. 37, 41, n. 3, 2010 WL 4536901, *4, n. 3 (6th Cir. Nov. 03, 2010), both cite *Carradine* for the proposition that the FSA does not apply retroactively to mandatory minimums. Further, though both also involved defendants already sentenced at the time the FSA went into effect, *Johnson* quoted the *Carradine* holding that "we must apply the penalty provision in place at the time [the defendant] committed the crime." *Johnson*, 407 Fed.Appx. at 12, n. 1, 2010 WL 5395725 at *3, n. 1 (citing *Carradine*, 621 F.3d at 580). Although the district court cases within the Sixth Circuit deal largely with previously-sentenced defendants, those that do not seem to be evenly split. *Compare United States v. Franklin*, No. 10–20467, 2011 WL 346085, at *2 (E.D.Mich. Feb. 03, 2011) (quoting *Carradine* in finding that "the Sixth Circuit was clear regarding the Act's applicability when it stated that a court in this circuit 'must apply the penalty provision in place at the time [a defendant] committed the crime in question.' As a result, even though Defendants have presented a good faith argument that the FSA should apply because they have not yet been convicted or sentenced, the Court is bound by Sixth Circuit precedent requiring application of the guidelines in place at the time the offenses occurred") with *United States v. Gillam*, No. 1:10–cr–181–2, 753 F.Supp.2d 683, 684–85, 2010 WL 4906283, at *1 (W.D.Mich. Dec. 03, 2010) (applying the *Douglas* reasoning and finding that "the Fair Sentencing Act permits no further federal crack cocaine sentencings that are not 'fair' ").

Outside the Sixth Circuit, several other courts of appeal have adopted the *Carradine* reasoning. Given the nature of the appellate process, the vast majority of these cases involved previously-sentenced defendants but, importantly, those courts focused on the time the crime was committed, rather than the time of sentencing, and none contained language indicating that the result would be different based on the defendant being sentenced after the FSA went into effect. *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir.2010)

(holding "because the FSA took effect in August 2010, after appellant committed his crimes, 1 U.S.C. § 109 bars the Act from affecting his punishment."); *United States v. Bradley*, No. 10–11639, 409 Fed.Appx. 308, 2011 WL 169228 (11th Cir. Jan. 20, 2011) (citing *Gomes* for the same proposition), *United States v. Mickens*, 408 Fed. Appx. 253, 2011 WL 49843 (11th Cir. Jan. 7, 2011) (citing *Gomes* for the same proposition); *U.S. v. Glover*, 398 Fed.Appx. 677, 680 (2d Cir.2010) (citing the savings statute as the reason "we must apply the mandatory minimum in effect at the time Baldwin committed the offense in question"); *United States v. McAllister*, 401 Fed.Appx. 818, 820, n. *, 2010 WL 4561395, at *1, n. * (4th Cir. Nov. 12, 2010) (affirming the denial of a continuance "sought ... primarily to await pending legislation [FSA]," because "the FSA did not expressly provide that those amend-

ments apply retroactively. Thus, despite the enactment of the FSA, the district court at sentencing had to apply the penalties in effect in 2009 when McAllister committed the instant offense.").[3]

Some courts have even noted that "no relevant authority permits a district court to impose a sentence below the statutory mandatory minimum. In fact, the court would have committed reversible error if it had sentenced him to less than [the mandatory minimum]." *Gomes*, 621 F.3d at 1346. *See also, United States v. Wilson*, 401 Fed.Appx. 760, 762, 2010 WL 4561381, at *2 (4th Cir. Nov. 12, 2010) (noting "even after amendments to the crack cocaine Guidelines, 'sentencing courts remain bound by the mandatory minimum sentences prescribed [by statute].' Thus, excepting its downward departure based on substantial assistance, the district court

---

**3.** *Cf. United States v. Reevey*, 631 F.3d 110, 114, n. 5 (3d Cir.2010) (holding a defendant already sentenced was not entitled to the benefit of the FSA because it had previously held that "District Court could not apply a statutory amendment in effect at the time of the defendant's sentencing that made her eligible for probation because the statute in effect at the time of the commission of her crime precluded eligibility for probation and Congress had not expressed an intention to give retroactive effect to the statutory change," while also distinguishing *Douglas* on the basis that that opinion acknowledged it was not applicable to already-sentenced defendants.); *United States v. Smith*, 632 F.3d 1043, 1049 (8th Cir.2011) ("Smith further argues that, while the FSA contains no express provision applying its reduced penalties to pending cases, we should imply such a provision from the congressional intent to replace the 'draconian' provisions of prior law. But the question is not whether Congress intended to 'release or extinguish' the prior penalties. That is always the case. The question is whether Congress intended to exempt the repealing act from the general savings statute. Section 109 provides that such an exemption must be 'expressly provide[d]' in the repealing statute. Even if we may disregard § 109's clear re-

quirement that an exemption be 'expressly' declared in the repealing act, which we doubt, Smith fails to call our attention to any language in the FSA from which an intent to exempt could be inferred.") (internal citations omitted).

*But see, United States v. Bell*, 624 F.3d 803, 814 (7th Cir.2010) (noting "[i]f [the defendant] were sentenced today under the FSA, his distribution of 5.69 grams of crack cocaine would be insufficient to trigger the mandatory minimum sentencing provisions; he would be subject only to a 30–year (360–month) maximum."); *United States v. Adams*, 628 F.3d 407, 420 (7th Cir.2010) ("[b]ecause Adams was sentenced before the FSA became law, it does not require him to be resentenced, and so we affirm his sentence"); *United States v. Gibbs*, 403 Fed.Appx. 82, 83–84, 2010 WL 4723337, at *2 (7th Cir. Nov. 22, 2010) ("at the time he was sentenced there was a statutory minimum of 10 years for persons convicted of distributing 50 grams or more of crack."); *United States v. Williams*, 413 Fed.Appx. 928, 2011 WL 167073 (8th Cir. Jan. 20, 2011) ("As Williams was sentenced before the Fair Sentencing Act became effective, the district court did not err in imposing the applicable mandatory minimum sentence to his crack offense.").

had no discretion to sentence Wilson below the mandatory minimum.") (internal citations omitted).

The Court is aware that its ruling today may admit some inevitable arbitrariness into the already-difficult myriad of value judgments a court must make when sentencing defendants; two defendants, otherwise equivalently situated, may receive very different punishments because one committed his crime before the FSA went into effect and one after. As the Third Circuit noted, however:

[I]t is possible that sometime in the future two defendants may receive different penalties for having committed essentially the same crimes-although at different times. Such a result may be considered anomalous, but it is Congress that has drawn the line. If penalties are to differ because of an arbitrarily selected date, it seems fairer that the severity of the penalty depend upon the voluntary act of a defendant in choosing the date of his criminal conduct than upon the date of sentencing, which could vary with the fortuities of criminal proceedings.

*Reevey*, 631 F.3d at 114 (3d Cir.2010) (quoting *United States v. Caldwell*, 463 F.2d 590, 594 (3d Cir.1972)).

## III. CONCLUSION

For all the reasons explained herein, this Court hereby **FINDS** that the reasoning underlying the Sixth Circuit's opinion in *United States v. Carradine*, 621 F.3d 575 (6th Cir.2010) compels the conclusion that the changes to the threshold levels for mandatory minimum sentences are not applicable to Defendant Campbell. Accordingly, Defendant Campbell is subject to the mandatory minimum sentences applicable to his offense at the time that offense was committed, prior to the enactment of the FSA.

One final matter merits discussion here. Paragraph 15 of the Plea Agreement between Defendant Campbell and the Government states, in relevant part:

In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense committed, the defendant agrees not to file a direct appeal of the defendant's conviction or sentence except as provided in paragraph two [preserving for appeal Defendant's right to appeal the Court's denial of its motion to suppress]. The defendant also retains the right to appeal a sentence imposed above the sentencing guideline range or any applicable mandatory minimum sentence (whichever is greater) determined by the district court.

(Court Doc. 36, Plea Agreement ¶ 15.)

Although there are few opinions addressing the applicability of the FSA mandatory minimum amendments, several of those opinions that are extant find that defendants had waived the right to appeal this issue in their plea agreements. Given the level of notice and briefing each party has provided the other and the Court regarding this dispute, it is clear that Defendant and the Government have fundamentally different understandings of what the "applicable mandatory minimum sentence" is in this case. Further, the Court's ruling on and understanding of this issue, solely a matter of law on which several district courts within the Sixth Circuit have already expressed disagreement, is significant to other defendants similarly situated.

Thus, the Court hereby **FINDS** that, as the Court has determined the applicable mandatory minimum to be significantly outside what Defendant understood the applicable mandatory minimum to be when he signed the plea agreement, the language in Paragraph 15 of the Plea Agreement incorporates this dispute within its scope and that Defendant thus retains the

right to appeal the Court's ruling on this issue.