RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0305p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                                                        No. 08-3220
        *v.*

ALLEN LEE CARRADINE,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-00330—Peter C. Economus, District Judge.

Decided and Filed:  September 20, 2010

Before:  BATCHELDER, Chief Judge; WHITE, Circuit Judge; GREER, District
Judge.[*]

_____

**COUNSEL**

**ON BRIEF:**  Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant.
Bernard A. Smith, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for
Appellee.

_____

**OPINION**

_____

        ALICE M. BATCHELDER, Chief Judge.  The defendant appeals the judgment
of conviction and sentence entered on his guilty plea to his being a felon in possession
of a firearm and possession with intent to distribute cocaine.  We affirm.

_____

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

**I.**

On July 7, 2005, the grand jury indicted Allen Carradine on charges of "felon in possession of a firearm" and "possession with intent to distribute cocaine," and a magistrate judge appointed attorney Jeffrey Kelleher to represent him. A month later, Kelleher moved the court to conduct a psychiatric exam to determine whether Carradine was competent to stand trial. The district court ordered the exam and, on February 7, 2006, conducted a competency hearing and found Carradine competent. Kelleher moved the court to compel discovery, moved to suppress certain evidence, and moved for at least two continuances. On April 26, 2006, Carradine himself moved the court to dismiss his case for lack of jurisdiction, on the basis that he had not been arrested on federal property. The district court denied the motion as improvidently filed, explaining that it would not accept any pro se filings so long as Carradine was represented by counsel (i.e., Kelleher).

At a pre-trial conference on June 15, 2006, the government offered Carradine a reduced sentence in exchange for a guilty plea and avoidance of trial. Carradine declined the offer and stated that he was firing his attorney, Kelleher, because Kelleher was actively attempting to have him incarcerated and could not be trusted. The next day, Kelleher moved to withdraw as counsel and the court granted the request. The court appointed Neal Atway as Carradine's new defense counsel.

Attorney Atway moved the court for preparation of a pre-plea presentence report and the court granted the motion. On October 11, 2006, attorney Atway moved the court for a second psychiatric or psychological examination of Carradine. The district court ordered the exam and, on January 30, 2007, conducted another competency hearing. The court again found Carradine competent. The parties prepared for trial. But on June 14, 2007, Carradine submitted an affidavit to the court attesting that his counsel, Atway, was working against him and he would be suing Atway for $9 million. Atway moved to withdraw as counsel and the court granted the motion.

On August 1, 2008, the court appointed Joseph Gardner as defense counsel, but at the final pre-trial conference on August 14, 2008, Carradine insisted that he did not

want Gardner to represent him, but wanted to represent himself. Gardner explained, on the record, that Carradine had refused to communicate with him or even meet with him. Carradine agreed that he had not communicated and would not communicate with Gardner. The record depicts Carradine as obstinate and hostile; he repeatedly interrupted the judge, complained, and answered almost every question by contending that he did not understand. The court explained that the government had offered a sentence of 60 months in prison (the statutory minimum and well below the Guidelines calculation of 97 to 121 months) in exchange for a guilty plea, but Carradine insisted that he wanted to go to trial. Moreover, he insisted that he wanted to represent himself, but when the judge attempted to conduct a colloquy to determine if Carradine was competent to represent himself, Carradine answered almost every question by stating that, no, he did not understand. Based on this colloquy, the court concluded that Carradine was "not familiar with the law, [] not familiar with the [c]ourt procedure, [and] not familiar with the rules of evidence," and held that he was not competent to represent himself.

The court eventually scheduled trial for October 30, 2007, and on the morning of trial, Carradine raised the prospect of representing himself one last time. A somewhat heated discussion ensued between Carradine and the court, in which Carradine insisted on his right to represent himself and the court attempted to regain control of the proceedings. *See* Transcript 2:8 - 12:24 ("Transcript of Trial/Change of Plea," Oct. 30, 2007). At the conclusion of this exchange, the court took a recess so that Carradine could have an out-of-court discussion with his attorney, Gardner. When they returned from the recess, Carradine — through his attorney — moved to enter a guilty plea. More importantly, after this recess Carradine was the very model of congeniality — he was attentive, agreeable, and answered every question during the plea colloquy fully and thoughtfully, without interrupting, arguing, or stating that he did not understand. The court accepted his plea.

The court conducted a sentencing hearing on January 30, 2008. In the first moments of the hearing, Carradine complained to the court that he had just received his pre-sentence report and that he needed time to review it because "[s]ome of the things

[in it] I never seen."  The court ordered a recess, stating:  "Okay.  We'll give you about ten minutes and I want you to read and discuss the contents of the presentence report with Mr. Gardner."  The record does not reflect the actual duration of the recess but, when court resumed, Carradine acknowledged that he had read the presentence report and discussed it with his attorney (Gardner), and had also resolved another issue that he had raised prior to the recess.  The court proceeded with the hearing and ultimately sentenced Carradine to 60 months in prison, the bottom of the newly calculated Guidelines range and the statutory minimum, and also added four years of supervised release.  The court waived any fine, but ordered Carradine to pay $1,983.58 to cover the costs of impaneling the jury in anticipation of trial.  Neither Carradine nor his attorney objected to any aspect of the sentence on the record at the hearing.

Carradine timely appealed both his conviction and sentence, raising three issues for our consideration.  It perhaps bears mentioning that he has a new attorney for purposes of appeal.

## II.

In his first claim of error, Carradine contends that the district court abused its discretion by denying his request to represent himself, arguing that the court's finding that he was incompetent to represent himself was inconsistent with its finding that he was competent to stand trial and enter a guilty plea.  The Supreme Court recently decided a case on materially indistinguishable facts, holding that a judge can find a defendant incompetent to represent himself and yet competent to plead guilty or stand trial with the assistance of counsel because the tests are different.  *See Indiana v. Edwards*, 554 U.S. --, 128 S. Ct. 2379, 2387-88 (2008).  Therefore, this argument is untenable.

To make a valid waiver of his right to counsel and thereby represent himself at trial, a defendant must convince the court that he apprehends "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."  *Von Moltke v.*

*Gillies*, 332 U.S. 708, 724 (1948). At his pretrial hearing, Carradine answered virtually every question directed to these matters by stating that he did not understand. Based on this record, we cannot conclude that the district court abused its discretion by denying his motion for self-representation. *See Fowler v. Collins*, 253 F.3d 244, 250 (6th Cir. 2001).

In his second claim of error, Carradine argues that the district court erred by proceeding with sentencing when Carradine had only just received the presentence report that morning and that the ten minute recess was not enough time for him to review it. *See* Fed. R. Crim. P. 32(e)(2) ("Minimum Required Notice. The probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period."). When Carradine returned from the recess, however, he did not raise this concern to the district court; he stated on the record that he had read it, he had discussed it with his counsel, and he had no objections. Because Carradine did not raise this error to the district court, we review it for plain error only. *See* Fed. R. Crim. P. 52(b). "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals[.]" *United States v. Olano*, 507 U.S. 725, 732 (1993). Under the plain error standard, we may "correct an error not raised at trial only where the appellant demonstrates that (1) there is an 'error'; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. --, 130 S. Ct. 2159, 2164 (2010) (editorial marks, certain quotation marks, and citation omitted).

The government points out that, although the court said that it would give Carradine ten minutes to review the report, the record does not reflect how long the recess actually lasted. Moreover, Carradine's counsel stated, both before and after the recess, that he had reviewed the report with Carradine. Finally, even after having the report for months, Carradine has not raised any objection to its contents. Therefore,

Carradine cannot demonstrate that the court committed plain error by proceeding with sentencing rather than providing him more time to review the report.

In his final claim of error, Carradine argues that the sentencing court exceeded its authority by ordering that he must pay the costs of impaneling the jury. Because he did not raise this claim to the district court at the sentencing hearing, we review this claim for plain error. *See* Fed. R. Crim. P. 52(b). The government points out that the court simply applied Local Rule 24.4:

> **Assessment of Jury Costs**
>
> The Court may, in its discretion, assess the defendant(s) or counsel with the cost of one day's attendance of the jurors if the defendant(s) pleads guilty after the jury has been summoned or during trial, the amount to be paid to the Clerk of Court. For purposes of interpreting this paragraph, a criminal jury is considered summoned for a trial as of noon the business day prior to the designated date of trial.

N.D. Ohio Local Rule 24.4 (enacted Nov. 1, 2004) (*available at* http://www.ohnd.uscourts.gov).

We note that the only two courts to have considered this issue might agree with Carradine, having held that district courts do not have the authority to impose jury costs. *See United States v. Mink*, 476 F.3d 558, 564 (8th Cir. 2007) (holding that "federal district courts are only allowed to impose as costs upon a criminal defendant those expenses expressly enumerated in § 1920," and jury costs are not so enumerated); *United States v. Banks-Giombetti*, 245 F.3d 949, 953 (7th Cir. 2001) (holding that "absent an authorizing statute, a Federal Rule of Criminal Procedure, or a local rule, a district court may not impose a sanction or other disadvantage for noncompliance with any requirement arising from a source other than a statute or rule without first giving the party actual notice of the requirement"). But neither of those cases involved a plain error review, and we are loath to conclude that a court that follows the established law has committed plain error.

**III.**

On August 12, 2010 — well after this case had been fully briefed and submitted for decision — Carradine moved to file a supplemental brief, arguing that he is entitled to the benefit of a recently enacted statute, the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010).  We granted the motion and accepted supplemental briefs from both parties.[1]

This new statute, which amends the existing law, raises the threshold for imposition of a 60-month statutory minimum prison sentence from five (5) grams of crack cocaine to 28 grams.  *See id.* at Sec. 2(a)(2) (amending 21 U.S.C. § 841(b)(1)(B)(iii)).  Carradine had 19 grams of crack cocaine, so he would be subject to the statutory minimum under the old version but not under the new.  Consequently, Carradine argues that the new version of the statute should apply.

The "general savings statute," 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed, unless the new enactment expressly provides for its own retroactive application.  *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660 (1974); *United States v. Avila-Anguiano*, 609 F.3d 1046, 1050 (9th Cir. 2010); *United States v. Smith*, 354 F.3d 171, 174 (2d Cir. 2003); *Korshin v. Comm'r*, 91 F.3d 670, 673-74 (4th Cir. 1996).

The new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language.  Consequently, we must apply the penalty provision in place at the time Carradine committed the crime in question.  We affirm the district court's imposition of the 60-month mandatory minimum sentence.

---

[1]In his supplemental brief, Carradine sought to incorporate by reference a 27-page brief filed with this court in an unrelated case.  The Government moved to strike that reference as an improper attempt to circumvent the page limitation we had imposed in our Order allowing the briefing ("Parties have two weeks from the date of this order to file their briefs, not to exceed 10 pages.").  We agree that Carradine's proposed incorporation would circumvent our 10-page limit. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 453 (6th Cir. 2003).  We therefore GRANT the Government's motion and strike the incorporation-by-reference portion of Carradine's supplemental brief.

**IV.**

For all of the foregoing reasons, we **AFFIRM** the district court's judgment.