UNITED STATES of America,

v.

**Razhon A. DICKEY, Defendant.**

Criminal No. 3:2009–34.

United States District Court,
W.D. Pennsylvania.

Jan. 4, 2011.

John J. Valkovci, Jr., United States Attorney's Office, Johnstown, PA, for United States of America.

Marketa Sims, Federal Public Defender's Office, Pittsburgh, PA, Jerome J. Kaharick, Jerome J. Kaharick & Associates, Johnstown, PA, Russell J. Heiple, Johnstown, PA, for Defendants.

### SENTENCING MEMORANDUM

KIM R. GIBSON, District Judge.

This matter comes before the Court on Defendant Razhon A. Dickey's Sentencing Memorandum in Support of Application of Fair Sentencing Act of 2010 (Document No. 115) and Supplemental Sentencing Memorandum Regarding Application of Fair Sentencing Act of 2010 (Document No. 123). The United States filed a Response to Defendant's Sentencing Memorandum and Supplemental Sentencing Memorandum in Support of Application of Fair Sentencing Act of 2010 (Document No. 126). The Court **denies** Defendant's request to apply the Fair Sentencing Act of 2010 to his pending sentencing.

The Fair Sentencing Act of 2010 (the "FSA"), signed into law on August 3, 2010, *inter alia* raised the amount of cocaine base necessary to trigger the five-year mandatory minimum sentence from 5 grams to 28 grams. The Act contains no provisions that specify its retroactive application to offenses that occurred prior to August 3, 2010. While some courts have found it within the province of the judiciary to apply the Fair Sentencing Act retroactively, this Court declines such an invitation. Defendants awaiting sentencing for conduct that occurred prior to August 3, 2010, will not be sentenced under the provisions of the Fair Sentencing Act of 2010.

\*     \*     \*

## Facts

Defendant Razhon A. Dickey was charged with one count of conspiring to distribute and possession with intent to distribute five grams or more of cocaine base in the form commonly known as crack ("crack cocaine"), two counts of knowing and intentional distribution of five grams or more of crack cocaine, and two counts of knowing and intentional distribution of less than five grams of crack cocaine. Mr. Dickey entered a guilty plea for all five counts on February 23, 2010. Mr. Dickey was awaiting sentencing when the Fair Sentencing Act of 2010 was signed into law on August 3, 2010, and when the Sentencing Commission issued temporary emergency amendments to its Guidelines on November 1, 2010, *infra*, in response to the enactment of the FSA (the "Emergency Amendments"). Defendant requests to be sentenced under the Fair Sentencing Act of 2010. The United States contends that conduct that transpired prior to August 3, 2010 should be punished under the prior mandatory minimum penalties in place when Mr. Dickey's criminal conduct occurred.

## Analysis

The text of the Fair Sentencing Act of 2010 is silent as to whether or not it should be applied retroactively. There have already been many opinions addressing the issue of whether or not the reduced mandatory minimums of the FSA should be applied retroactively to a defendant whose criminal offenses occurred prior to, and who was sentenced prior to, August 3, 2010; all of the cases involving this scenario which the Court has located have held that the FSA should *not* be applied retroactively under these circumstances. How-

ever, recently courts have begun to diverge in their decisions over crack cocaine cases where three events in the criminal justice process, the criminal activity, the conviction and the sentencing, straddle the dates between August 3, 2010 (the FSA's enactment) and November 1, 2010 (the date the Emergency Amendments were issued by the Sentencing Commission). In addition to the already discussed situation where both the crime and the sentencing occurred prior to August 3, 2010, there are two possible situations [1] where these three events straddle the dates of August 3, 2010 and November 1,2010:

1) defendants whose crime occurred *before* August 3, 2010 and were sentenced *between* August 3 and November 1, 2010; and

2) defendants whose crime occurred *before* August 3, 2010 but who were *not* sentenced by November 1, 2010 (the situation in the case *sub judice* ).

The issue addressed in this Memorandum falls within scenario number 2.

Judge D. Brock Hornby of the District Court of Maine first identified, in two decisions issued on October 27, 2010, the potential confusion regarding retroactivity *vis a vis* the various scenarios outlined above. *See United States v. Douglas*, 746 F.Supp.2d 220, 2010 WL 4260221 (D.Me. Oct.27, 2010); see also *USA v. Butterworth*, 2010 WL 4362859, 2010 U.S. Dist. LEXIS 114589 (D.Me. Oct. 27, 2010). In *Butterworth*, Judge Hornby found, in line with many other cases, that a defendant whose crime occurred before August 3, 2010 and who was sentenced prior to August 3, 2010, was not entitled to retroactive application of the FSA. In contrast, in

---

1. The Court notes that a third situation may present itself, namely defendants whose crime occurred *after* August 3, 2010 and were sentenced *before* November 1, 2010, but since the crime in that scenario would have occurred

*after* August 3, 2010, this Court would not be presented with the issue of retroactive application of the FSA (although possibly with the issue of retroactive application of the Emergency Amendments to the Guidelines).

*Douglas*, Judge Hornby found that the Emergency Amendments to the Sentencing Guidelines (*i.e.*, the reduced mandatory minimums) applied to scenario number 2, above—namely defendants whose crime was committed before August 3, 2010 but who had not yet been sentenced as of November 1, 2010. Since Judge Hornby's decision in *Douglas* came out, it has been cited in numerous cases, some of which applied the rationale of *Douglas* and some of which rejected it.[2]

The defendant in the instant case, Mr. Dickey, seeks to have the FSA applied to his pre-August 3, 2010 crimes, for which he has not yet been sentenced. Mr. Dickey's written and oral arguments rely heavily on *Douglas*, While Judge Hornby's opinion from the district of Maine is not binding on this Court, its gravitas in other courts[3] and in Mr. Dickey's briefs warrants a reasoned analysis and reply.

The facts of *Douglas* are roughly similar to those in the instant case. Mr. Douglas pleaded guilty to five counts involving distribution of cocaine base that occurred prior to August 3, 2010, and was to be sentenced after November 1, 2010. Judge Hornby was presented with the question of whether the Fair Sentencing Act should apply to Mr. Douglas's sentence. As did the defendant in the instant case before this Court, Mr. Douglas pleaded guilty to distribution of cocaine base prior to August 3, 2010, and was awaiting sentencing when the Fair Sentencing Act of 2010 was signed into law and the Emergency Amendments were issued. Despite the "absence of any explicit direction" from Congress on retroactivity, Judge Hornby

---

**2.** *See, e.g.,* two decisions in the Eastern District of Virginia, both by Judge Henry E. Hudson, which found that the FSA does *not* retroactively apply to defendants whose crimes were committed before August 3, 2010 but who were not yet sentenced as of November 1, 2010: *USA v. Holmes*, 2010 WL 4961657, 2010 U.S. Dist. LEXIS 126927 (E.D.Va. Dec. 1, 2010); and *USA v. Lightfoot*, 2010 WL 5300890, 2010 U.S. Dist. LEXIS 135563 (E.D.Va. Dec. 22, 2010). *But see also USA v. Gillam*, 753 F.Supp.2d 683, 2010 WL 4906283, 2010 U.S. Dist. LEXIS 131370 (W.D.Mich. Dec. 3, 2010), where defendant's criminal activity occurred before August 3, 2010 and Judge Janet Neff applied the FSA in sentencing the defendant on November 22, 2010. *See also* the decision by District Judge Thomas L. Ludington of the Eastern District of Michigan, which finds that the date scenario of number 2, above, which is present in *Douglas* was not present in the case before him, but it would not change the outcome if it was, because the FSA is *not* retroactive. *USA v. Conley*, 2010 WL 4818389, 2010 U.S. Dist. LEXIS 122889 (E.D.Mich. Nov. 19, 2010). *See also USA v. Kornegay*, in which District Judge James C. Fox of the Eastern District of North Carolina notes that the *Sentencing Commission* did not indicate intent for the Emergency Amendments to be retroactive, therefore a motion to reduce sentence was denied with leave to refile if the *Sentencing Commission* should announce the retroactive application of the FSA. 2010 U.S. Dist. LEXIS 118674 (E.D.N.C. Nov. 8, 2010).

**3.** Citing *Douglas*, a number of other cases have found the FSA to be retroactive. *See United States v. Bryant Angela*, 1:10–cr–10004–RWZ (D.Mass.) (Zobel, J.), 10/29/10 docket entry—"Motion for fair sentencing act as to Bryant Angelo (1). Allowed, as I fully concur with Judge Hornby's thorough and thoughtful opinion." *U.S. v. Douglas*, Cr. No. 09–202–P–H, 10/27/10 (Urso, Lisa) (Entered: 10/29/2010)." (Zobel, J.); *United States v. Wendell Shelby*, 2:09–cr00379–CJB (E.D.La.) (Barbee, J.), docket entry #49 states: "Should Defendant Shelby be convicted, in imposing the sentence this Court will apply the Fair Sentencing Act of 2010, for the reasons fully stated in an opinion by Judge D. Brock Hornby, United States District Court for the District of Maine. *U.S. v. Douglas*, No. 09–202–P–H, 746 F.Supp.2d 220, 2010 WL 4260221 (D.Me. October 27, 2010)." Signed by Judge Carl Barbier on 11/10/10 (sek) (Entered 11/10/11); *United States v. Roscoe*, 1:10CR:126–JTN (W.D.Mich.) (Neff, J.), 11/15/10. (Followed *Douglas* and noted even more reason to do so because the defendant pled guilty after FSA was enacted).

found that the "new provision that lowers the mandatory sentencing floors applies to a defendant who has not yet been sentenced, but who engaged in crack cocaine trafficking and pleaded guilty under the previous harsher regime." *Douglas*, 746 F.Supp.2d at 221, at *1, Judge Hornby concluded that "based upon the context of the Act, its title, its preamble, the emergency authority afforded to the Commission, and the Sentencing Reform Act of 1984, that Congress did not want federal judges to continue to impose harsher mandatory sentences after enactment merely because the criminal conduct occurred before enactment." *Id.* at 231, at *6.

The arguments advanced by Mr. Dickey closely track the arguments made by the Court in *Douglas.* The government in *Douglas,* as in the instant case, contended that the general saving clause, 1 U.S.C. § 109, applies "to all future prosecutions and sentencings based on pre-August 3, 2010, conduct." *Douglas,* 746 F.Supp.2d at 226, at *3, Mr. Douglas contended, as does Mr. Dickey, that the saving clause does not apply to the Fair Sentencing Act of 2010. *Id.* Relying on *Great Northern R. Co. v. United States,* both Mr. Douglas and Mr. Dickey argue that the saving clause should not apply to the Fair Sentencing Act, because its application would frustrate congressional intent about retroactivity, which intent was articulated through "necessary implication," 208 U.S. 452, 465, 28 S.Ct. 313, 52 L.Ed. 567 (1908).

This Court respectfully disagrees with Judge Hornby's opinion and the arguments of Mr. Dickey in several respects. First, their interpretation of Supreme Court precedent governing the general saving clause is in tension with the previous binding interpretations of that precedent by other courts. Second, the overreliance on the stated goal of "achiev[ing] consistency" and "conformity" in sentencing conflicts with the plain text of the statute, and fails to accord proper significance to its silence with respect to retroactivity. Third, the attempt to search for legislative intent from selected statements of individual congressmen who were sponsors of the law disregards the constitutional primacy of the text of a statute, and divines a purpose never adopted by the whole of Congress.

Additionally, the *Douglas* approach of determining the application of the Fair Sentencing Act based upon the date of sentencing, rather than the date the crime was committed, would appear to result in less fair sentencing, rather than more fair sentencing. This Court understands the temptation to apply the new reduced mandatory minimums and the new sentencing guidelines as soon as practicably possible in light of the acknowledged unfairness of the penalties for crack cocaine versus powder cocaine under the previous statute and guidelines. However, finding the Fair Sentencing Act to be retroactive based upon whether *sentencing* had or had not occurred on August 3, 2010 not only fails to take into proper account the impact of the general saving clause but also may appear less fair and less even-handed than application of the FSA using a single cutoff date based upon the date of the *offense.*[4] For all of these reasons, the Fair Sentencing Act of 2010 cannot be applied retroactively absent explicit direction by Congress.

## I. The general saving clause

Congress codified the first general saving provision in order to derogate from the

---

4. For instance, a defendant who committed a crack-related offense before August 3, 2010, and pled guilty and was sentenced on August 1, 2010, may well wonder why his cellmate, who committed his crack-related offense before August 3, 2010 and was sentenced on November 1, 2010 receives the benefit of the Fair Sentencing Act but he does not.

common-law presumption that the repeal of a criminal statute resulted in the abatement of "all prosecutions which had not reached final disposition in the highest court authorized to review them." *Bradley v. United States,* 410 U.S., 605, 607, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973). The Saving clause, codified at 1 U.S.C. § 109, provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

The Court's first definitive explication of the saving clause came in *Great N. R. Co. v. United States,* 208 U.S. 452, 28 S.Ct. 313, 52 L.Ed. 567 (1908). In *Great Northern,* the Supreme Court construed § 13, Rev. Stat.—the precursor of the current saving clause—following the enactment of the Hepburn Law. Then–Justice White, writing for the Court, noted that "under the general principles of construction requiring, if possible, that effect be given to all the parts of a law, the [predecessor to the saving clause] must be enforced unless, either by express declaration or *necessary implication,* arising from the terms of the law as a whole, it results that the legislative mind will be set at naught by giving effect to the provisions of § 13." *Id.* (emphasis added). Seizing on the quote, both

Mr. Douglas and Mr. Dickey argue that the saving clause does not apply to the Fair Sentencing Act, because such application would have the "result [ ] that the legislative mind will be set at naught," and would frustrate congressional intent that the FSA be applied retroactively as articulated through "necessary implication." 208 U.S. 452, 465, 28 S.Ct. 313 (1908).

This seemingly broad cannon of construction lay relatively dormant in the U.S. Reports until Justice Brennan innocuously cited it in a footnote in *Warden, Lewisburg Penitentiary v. Marrero,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). In *Marrero,* the Court found that the prohibition against parole in the Comprehensive Drug Abuse Prevention and Control Act of 1970 was a "penalty, forfeiture, or liability" saved from release or extinguishment by the general saving clause, and for such reason also survived the repeal of the underlying statute and the penalties for narcotics offenses outlined therein. *Id.* at 664, 94 S.Ct. 2532. In a footnote, Justice Brennan cited *Great Northern:* "Respondent argues that, since the 1970 Act contains its own saving clause, § 1103(a), that specific directive should be read to supersede the general clause § 109. But only if § 1103(a) can be said by *fair implication or expressly* to conflict with § 109 would there be reason to hold that § 1103(a) superseded § 109. *See Great Northern R. Co. v. United States,* 208 U.S. 452, 465–466, 28 S.Ct. 313, 316–317, 52 L.Ed. 567 (1908). We find no conflict." 417 U.S. at 656 n. 4, 94 S.Ct. 2532. In this footnote Justice Brennan discounted Respondent's argument that the saving clause in the Drug Act negated the force of the general saving clause. Notwithstanding this broad language, Justice Brennan discerned no conflict between the general saving clause and the 1970 Act. Citing *Great Northern,* Justice Brennan found that the Drug Act did not supersede the general saving

clause by "fair implication or express [declaration]". *Id.*

Judge Hornby found "force" in Mr. Douglas's argument that "either by express declaration or necessary implication," the Fair Sentencing Act supersedes the general saving clause. *Id.* at 228, at *4. Notwithstanding Justice Brennan's admonition, the *Douglas* court distinguished the Comprehensive Drug Abuse Prevention and Control Act of 1970 at issue in *Marrero* from the Fair Sentencing Act, because in "*Marrero,* the new statute had its own saving clause that specifically preserved the harsher penalty for prosecutions occurring prior to the effective date of the statute," *Id.; citing* 417 U.S. at 656 n. 4, 94 S.Ct. 2532. The *Douglas* court finds it significant that, in contrast, the Fair Sentencing Act has no internal saving clause. *See Douglas,* 746 F.Supp.2d at 226-28, at *4. This is largely a distinction without a difference, and if anything, supports the opposite conclusion—that the absence of a saving clause bolsters the applicability of the general saving clause.

Given that the Supreme Court in *Marrero* found that a comprehensive statute that had a saving clause was not sufficient to supersede the general saving clause, then it is quite dubious to assert that the Fair Sentencing Act's silence on the question of retroactivity is sufficient to render the general saving clause inapplicable. While the capacious language of *Great Northern*—"express declaration or necessary implication"—would seem to lend itself to free-wheeling divinations and speculations about possible implications of Congressional tenor, the Supreme Court's opinion in *Marrero* counsels a more moderate, narrower interpretation. The Court in *Marrero* found that the Comprehensive Drug Abuse Prevention and Control Act of 1970—which included a saving clause within its text—did not through "fair implication or express [declaration] ... conflict with § 109," *Marrero,* 417 U.S. at 664 n. 10, 94 S.Ct. 2532. Therefore, there would be no "reason to hold that § 1103(a) superseded § 109." *Id.* Thus, to reiterate, the Supreme Court has found that even where a piece of legislation contains an internal saving clause, that clause should be read in conformity with the general saving clause where possible. Thus, Defendant's argument—that Congressional tenor and silence as to retroactivity in enacting the Fair Sentencing Act is sufficient to render the general saving clause inapplicable—is unpersuasive.

The Third Circuit's opinion in *Jacobs* supports this conclusion. *U.S. v. Jacobs,* 919 F.2d 10 (3rd Cir.1990). In *Jacobs,* the defendant pleaded guilty to alleged criminal conduct that occurred on February 21, 1988. *Id.* at 11. As the court summarized, "[a]t the time that Jacobs committed her offense, it was classified as a Class B felony because the maximum authorized term of imprisonment is twenty years. 18 U.S.C. § 3559(a)(1)(B) (1985). Section 3559(a) was amended on November 18, 1988, changing the classification of offenses with maximum prison terms of twenty years from B to C." *Id.* The district court sentenced Jacobs according to the "classification in effect at the time of sentencing," rather than the classification in effect at the time of the offense. *Id.* Relying on *Marrero,* the Third Circuit reversed the District Court.

The Third Circuit noted that "[i]n order to prevent the repeal of a criminal statute from abating criminal prosecutions that had been initiated but had not reached final disposition, Congress passed a general saving clause." *Id.; citing Marrero,* 417 U.S. at 660, 94 S.Ct. 2532. The Third Circuit reasoned that because ineligibility for probation is a type of penalty, § 109 applies to amendments of statutory classifications that render a defendant eligible

for probation. *Id.* at 12. In this opinion, Judge Cowen remarked on the broad stroke with which the *Marrero* Court painted, noting that "the saving clause prohibits the application of ameliorative sentencing laws, noting that the terms 'penalty,' 'liability,' and 'forfeiture' in the statute apply to *all* forms of punishment." *Id.*; *citing Marrero*, 417 U.S. at 661, 94 S.Ct. 2532 (emphasis added). The Court would not consider "Congress's prior indication" that the statute would be amended, nor look to the "intended permanence of a repealed statute in determining whether 1 U.S.C. § 109 preserves that statute"—to look at these items "would contradict the plain language of 1 U.S.C. § 109." *Id.* at 13. Further, "[t]here is nothing in the saving clause that directs the courts to evaluate the significance Congress attached to a statutory amendment in determining whether the saving clause applies." *Id.* The Third Circuit declined the invitation to examine reams of legislative history to determine congressional intent—the exact approach Defendant seeks—refusing to accede to arguments about nebulous "necessary implication[s]." *Great Northern*, 208 U.S. at 455, 28 S.Ct. 313. This Court adopts the Third Circuit's approach as the appropriate judicial scope of review and therefore will decline to glean additional authority from the unadopted comments of individual congressmen, or from the subjective "tone" Mr. Dickey suggests pervades the Act. Neither of these things supersedes the plain language of the Act's text, nor should they be utilized in invalidating the applicability of the saving clause.

While Mr. Dickey seizes on *Great Northern,* the defendant does not cite a single case where the Supreme Court, relying on that language, finds that a statute lacking a saving clause supersedes the general saving clause.[5] The Court was unable to find any cases—prior to Judge Hornby's opinion—that relied on the "necessary implication" test from *Great Northern* to find that a statute without a saving clause supersedes the general saving clause. To the contrary, all opinions that cite to *Great Northern,* with the exception of *Douglas* and its progeny, found that the saving clause preserved the older penalty. While the language of *Great Northern* is quite broad in theory, its effectiveness in practical terms is quite limited. This Court is not prepared to read into the history of the Fair Sentencing Act of 2010 a "necessary implication" that supersedes the general saving clause. We note a recent decision of the Sixth Circuit, *USA v. Carradine,* which, while not binding on this Court, is nonetheless persuasive authority by a higher court that, absent explicit language in the text of the FSA, the general saving clause *does* apply and the Act is not to be construed as retroactive:

> The new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language. Consequently, we must apply the penalty provision in

---

**5.** Defendant's citations to *Hamm v. City of Rock Hill,* 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964) is inapposite, as the *Hamm* Court distinguished the rights-conferring Civil Rights Act from mere "technical abatements," such as the Fair Sentencing Act of 2010. *Id.* at 314, 85 S.Ct. 384 ("The federal saving statute was originally enacted in 1871, 16 Stat. 432. It was meant to obviate mere technical abatement such as that illustrated by the application of the rule in *Tynen* decided in 1871. There a substitution of a new statute with a greater schedule of penalties was held to abate the previous prosecution. In contrast, the Civil Rights Act works no such technical abatement. It substitutes a right for a crime. So drastic a change is well beyond the narrow language of amendment and repeal. It is clear, therefore, that if the convictions were under a federal statute they would be abated.").

place at the time Carradine committed the crime in question.

621 F.3d 575, 580–581 (6th Cir.2010).[6] *See also USA v. Askew*, in which the Eastern District of Michigan, in relying on *Carradine*, stated succinctly, "Accordingly, even if Defendant Askew had not yet been convicted or sentenced, the Fair Sentencing Act would not apply in this case because the illegal conduct occurred before the statute was enacted." 2010 WL 4807066, 2010 U.S. Dist. LEXIS 12203 (E.D.Mich. Nov. 18, 2010).

Accordingly, the general saving clause controls, and the prior statutory regime remains in place for conduct that transpired prior to the enactment of the Fair Sentencing Act of 2010.

## II. The Emergency Amendments and "Achiev[ing] Consistency"

Beyond the saving clause, Mr. Dickey contends that the emergency amendments issued following the enactment of the Fair Sentencing Act reveal congressional intent that the Act should be applied retroactively. Section 8 of the Fair Sentencing Act of 2010, titled "Emergency Authority For United States Sentencing Commission," gives the Commission emergency authority and instructs it to promulgate all necessary guidelines, amendments and policy statements within 90 days of enactment, *i.e.*, by November 1, 2010. As a result, the Sentencing Commission issued amendments on October 15, 2010. *See* U.S. Sentencing Commission, Rules of Practice and Procedure 4.1, 62 Fed. Reg. 38598; *see*

*also* U.S. Sentencing Commission, News Release: United States Sentencing Commission Promulgates Amendment to Implement Fair Sentencing Act of 2010 (Oct. 15, 2010), available at http://www.ussc.gov/PRESS/re120101015.pdf (last visited Oct. 25, 2010).

In *Douglas*, Judge Hornby focuses on the emergency guideline amendment authority Congress gave to the Sentencing Commission: Section 8 of the FSA directs the United States Sentencing Commission to "promulgate the guidelines, policy statements, or *amendments* provided for in this Act as soon as practicable, and in any event not later" than November 1, 2010. Fair Sentencing Act § 8 (emphasis added). Hornby notes that § 8 instructs the Commission to "make such conforming amendments to the Federal Sentencing Guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." *Douglas*, 746 F.Supp.2d at 228, at *4. Exercising this authority, the Commission issued a "temporary, emergency amendment to sentencing guidelines and commentary," such that the "the relationship between the statutory penalties for crack cocaine offenses and the statutory penalties for offenses involving other drugs is consistently and proportionally reflected throughout the Drug Quantity Table." *Notice of a Temporary Emergency Amendment to Sentencing Guidelines and Commentary*, 75 Fed.Reg. 66188–02, 66191, 2010 WL 4218801 (F.R.) (Oct. 27, 2010).

---

**6.** In *Carradine*, the crime and sentencing occurred before August 3, 2010, but an appeal of the sentence imposed was pending after August 3, 2010 and was resolved in the decision on September 20, 2010, which was of course prior to the passage of Emergency Amendments on November 1, 2010. However, this Court notes that the issuance of Emergency Amendments to the Guidelines, effective November 1, 2010, does not directly

affect the issue before this Court and the issue addressed in *Carradine*, because the Sentencing Commission does not have the authority to make a statute retroactive—only Congress can do so—and the current issue before this Court is the retroactivity of the FSA. In any event, as noted elsewhere in this Memorandum, the Sentencing Commission did not make the Emergency Amendments retroactive.

The *Douglas* court reasons that the new guidelines cannot conform to and achieve consistency with Congress's express intent of fairness in sentencing of crack cocaine offenses if these guidelines will not be applied uniformly over the next five years, *i.e.*, until the statute of limitations runs on all crack-related criminal conduct occurring prior to the enactment of the FSA on August 3, 2010. *Douglas*, 746 F.Supp.2d at 226-28, at *4. Further, Judge Hornby reasons that it is clear that Congress intended that the general saving clause should not apply to the FSA because it "expressly granted the Commission *emergency* Guideline amendment authority" and indeed, "expressly directed the Commission to adopt Guideline amendments 'as soon as practicable.'" *Id.* [*emphasis in original*]. Thus, Judge Hornby reasons that the omission of a saving clause within the text of the FSA did not signal an intent that the general saving clause applied; rather, he reasons that Congress' direction to the Commission to issue emergency amended guidelines effectively replaces the necessity of an explicit direction within the FSA that the general saving clause should *not* apply to the FSA. Judge Hornby reasons that the amendments to the Sentencing Guidelines which Congress is authorizing within the FSA *must* refer to "any changes in the new crack penalty provisions", which changes must be made based on "the new [reduced] statutory minimum provisions", thus Congress' intent that the general saving clause should not apply is evident. *Id.* This Court disagrees; Congress could have easily signaled, with the insertion of a single sentence, its intention that the general saving clause should not apply to the FSA, if indeed that was its intention. Congress is aware of the history of the general saving clause, and to assume this convoluted construction, that Congress intended its direction to the Sentencing Commission to negate the general saving clause, is an exercise in speculation not within this Court's purvue.

The Fair Sentencing Act of 2010 consists of nearly 1,300 words—the word "retroactive" is not among them. Judge Hornby seizes on three words, "conforming" and "achieve consistency," to do what Congress failed to do expressly in the statute as enacted—apply the revised mandatory statutory minimums to conduct that occurred prior to August 3, 2010. Congress would have only needed to include one sentence containing the word "retroactive" to resolve this issue. Yet, this word appears nowhere in the Fair Sentencing Act. As the Supreme Court has stated, courts should avoid "reading congressional intent into congressional inaction," *Kimbrough v. United States*, 552 U.S. 85, 106, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007); *citing Bob Jones Univ. v. United States*, 461 U.S. 574, 600, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983). The fact that such an important issue, subject to discussions prior to the Act's enactment by numerous members of Congress, was not acted upon, suggests that the Act's failure to specify retroactive application was an intentional omission.

Congress is well acquainted with the process of making sentencing amendments retroactive. In 2006, Congress enacted 28 U.S.C. § 994, which authorized the United States Sentencing Commission to make changes to the guidelines for cocaine base offenses. Section 12, titled "Retroactivity of guideline amendments," specifically enumerated procedures with respect to retroactivity. Under the authority of 28 U.S.C. § 994, the Sentencing Commission properly determined that "this amendment should be applied retroactively." Sentencing Guidelines for United States Courts, 72 Fed. Reg. 28,571–28,572 (May 21, 2007). In contrast, the Fair Sentencing Act does not provide any language governing retroactivity. Thus, unlike the amendments in 2006, the Sentencing Commission properly

made no such finding when discussing the emergency amendments which were ultimately adopted in October 2010, with an effective date of November 1, 2010.

The Court is not suggesting that it would be impermissible in all circumstances to interpret a piece of legislation as retroactive where it does not specifically provide for such retroactive application within its own text. However, we need more than the use of the terms "conforming" and "achieve consistency" in order to interpret an authorization by Congress to retroactively apply a statute that will significantly affect the sentencing of many defendants over the next five years. Without clear direction from the Congress to do otherwise, the Court will apply the previous statutory minimum sentences to conduct that occurred prior to August 3, 2010.

## III. Congressional Intent and Statutory Text

More broadly, Mr. Dickey contends that congressional intent, and the groundswell of popular support leading to the enactment of the Fair Sentencing Act of 2010, whose purpose is to promote fairness in sentencing, show that it was intended to apply retroactively. The Defendant writes that "[t]he legislative history of the Fair Sentencing Act of 2010 makes abundantly clear that Congress thought every person sentenced under the crack penalties in the

old law was denied the same justice, fairness, and equal protection as is available under the Fair Sentencing Act." Defendant also cites to a letter written by Senators Durbin and Leahy, dated November 17, 2010, in which the lead sponsors of the Fair Sentencing Act of 2010 urge Attorney General Holder to "apply its modified mandatory minimums to all defendants who have not yet been sentenced, including those whose conduct predates the legislation's enactment."

Relying on legislative history to understand legislative intent overlooks the important initial question. There is no doubt that an individual legislator has an intent when he or she votes for or against a specific statutory text; but does a legislature, as a collective body, actually possess a discernible, specific intent when passing a statute, if that intent is not expressed in the text? Is there some kind of symbiotic collective consciousness that permeates throughout the Capitol?[7] To quote Judge Vinson's opinion in *Florida v. United States Department of Health and Human Services*, 716 F.Supp.2d 1120(N.D.Fla.2010), "[r]egardless of whether the members of Congress had this specific motivation and intent (which, once again, is not my place to say), it is obvious that Congress did not." It is important to remember that Congress is a *they*, not an *it*.[8] As Professors Richard Posner and

---

7. *See* Max Radin, *Statutory Interpretation*, 43 Harv. L. Rev. 863, 870–71 (1930) ("The chances that of several hundred men each will have exactly the same determinate situations in mind as possible reductions of a given determinable, are infinitesimally small.... In an extreme case, it might be that we could learn all that was in the mind of the draftsman, or of a committee of half a dozen men who completely approved of every word. But when this draft is submitted to the legislature and at once accepted without a dissentient voice and without debate, what have we then learned of the intentions of the four or five hundred approvers? Even if the contents of the minds of the legislature were uniform, we

have no means of knowing that content except by the external utterances or behavior of these hundreds of men, and in almost every case the only external act is the extremely ambiguous one of acquiescence, which may be motivated in literally hundreds of ways, and which by itself indicates little or nothing of the pictures which the statutory descriptions imply.").

8. *See* Kenneth A. Shepsle, Congress Is a "They," Not an "It": Legislative Intent As Oxymoron, 12 INT'L REV. L. & ECON. 239, 254 (1992) ("Individuals have intentions and purpose and motives; collections of individu-

William Landes observed, the process of passing laws represents a series of deals and compromises, wherein each legislator has a separate view as to what the law means and what the purpose of the law is.[9] Judge Hornby recognizes that the Fair Sentencing Act of 2010 "emerged out of compromise." *Id.* at 224, at *3. While many advocates wanted to reduce the sentencing disparity with powder cocaine from 100:1 to 1:1, ultimately Congress settled on a ratio of 18:1. Indeed, this was a bill of compromise in many respects. Several items on the wish list of Fair Sentencing advocates—including applying the Act retroactively to defendants awaiting sentencing at the time of the enactment—never made it into the final bill.

Defendant selectively presents favorable segments from the legislative history of the Fair Sentencing Act—with particular focus on the statements of Senators Leahy and Durbin in the Senate and Congresswoman Jackson Lee in the House of Representatives. Focusing on generalized statements of intent drafted by specific parties "sacrifices some of the normative appeal of intentionalism's professed goal, which is to implement the actual intent of the enacting Congress" *qua* Congress.[10] Justice Scalia notes that relying on legislative history "is extensive [with] something for everybody. As Judge Harold Leventhal used to say, [reading legislative history is like looking] over the heads of the crowd and pick[ing] out your friends. The variety and specificity of results that legislative history can achieve is unparal-

leled." [11] That subjectivity is exacerbated due to the fact that there is no consistent approach to relying on legislative history.[12] Former Chief Judge of the U.S. Court of Appeals for the District of Columbia Patricia Wald lamented, "consistent and uniform rules for statutory construction and use of legislative materials are not being followed today." [13]

A bill obtains the force of law through bicameralism and presentment to the President, and not the intent of individual legislators.[14] Further, the letter referenced by Mr. Dickey was sent on behalf of only Senators Durbin and Leahy, and not the United States Senate as a legislative body. Although the Senators appear to impute their intent to the entire Senate, they only spoke for themselves—only two signatures were affixed to the letter. This Court is not prepared to subjugate the text of the Fair Sentencing Act by selectively citing statements made by individual legislators in order to effectuate an intent not present in the text of the statute.

\* \* \*

Judge Hornby concluded that "based upon the context of the Act, its title, its preamble, the emergency authority afforded to the Commission, and the Sentencing Reform Act of 1984, that Congress did not want federal judges to continue to impose harsher mandatory sentences after enactment merely because the criminal conduct occurred before enactment." *Douglas,* 746 F.Supp.2d at 231, at *6. It may be argued that, as a matter of policy, for the reasons

als do not. To pretend otherwise is fanciful.").

**9.** William M. Landes & Richard A. Posner, *The Independent Judiciary in an Interest–Group Perspective,* 18 J.L. & ECON. 875, 894 (1975)

**10.** William Eskridge et al, LEGISLATION AND STATUTORY INTERPRETATION 224 (2006).

**11.** Antonin Scalia, MATTER OF INTERPRETATION 36 (Amy Gutmann, ed., 1997).

**12.** *Id.* at 36.

**13.** Patricia Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term,* 68 IOWA L. REV. 195, 214 (1983).

**14.** *See* U.S. CONST. art. I, § 7, cl. 2.

Judge Hornby identified, Congress should have made the Fair Sentencing Act of 2010 retroactive. It seems peculiar that a bill with the stated goal of "restor[ing] fairness to Federal cocaine sentencing," Preamble, Fair Sentencing Act, would instruct "judges to continue to impose new sentences that are not 'fair' over the next five years while the statute of limitations runs?" *Douglas,* 746 F.Supp.2d at 229, at \*5. *See* 18 U.S.C. § 3282(a) ("no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed").

Yet, these conjectures are of no moment. Simply stated, Congress did not provide for retroactivity. Judge Hornby recognized that the "statute itself contains no provision stating in so many words either that it applies to all sentencings going forward, or that it applies only to criminal conduct that occurs after its effective date." *Id.* at 224, at \*3. This Court will not seize upon and inflate the importance of isolated words and phrases such as "conforming" and "achieve consistency" in order to read between the lines when Congress chose to omit any reference to retroactivity. Statutes are fixed through the democratic process, not through judicial review. It is not the role of the courts to give effect to what certain members thought Congress *should* have done. Nor is it the role of the courts to give effect to what we judges *think* Congress should have done. The courts only give effect to what Congress *actually did.*

The Fair Sentencing Act of 2010 will not be applied to Defendant's sentencing. Mr. Dickey will be sentenced in accordance with the statutory minimum sentences in place prior to the enactment of the Fair Sentencing Act of 2010. A sentencing hearing shall be scheduled.

## ORDER

**AND NOW,** this 4th day of January, 2011, **IT IS HEREBY ORDERED** that the Fair Sentencing Act of 2010 ("FSA") is determined **not** to be retroactive and therefore Defendant Razhon A. Dickey shall be sentenced without application of the FSA for the reasons set forth in the foregoing Memorandum. A sentencing hearing shall be scheduled in a separate order.