NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0133n.06

No. 07-3687

**FILED**

**Feb 28, 2011**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA

    Plaintiff-Appellee,

v.

ANTHONY GREER,

    Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO AT CLEVELAND

_____/

Before:    KENNEDY and MARTIN, Circuit Judges; MURPHY, District Judge.[*]

STEPHEN J. MURPHY, III, District Judge. Anthony Greer was convicted of one count of aiding and abetting the distribution of cocaine base in 2007. The district judge ordered Greer to serve a statutory-minimum ten-year sentence of incarceration. Greer now seeks review of his sentence, on the grounds that the district judge should have considered a sentence below the statutory minimum. We **AFFIRM** the sentence imposed by the district judge.

**I. BACKGROUND**

On the night of November 30, 2006, officers from the Cleveland Police Department arrested Greer alongside co-defendant Willard McConnell, a drug dealer, and Ishmael Martin, Greer's roommate. The arrest was part of a "buy and bust" operation coordinated by the police. Trial Tr. 21–22, Feb. 20–21, 2007, R. 52–53. Martin had a prior arrest for drug dealing, and was working

_____

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

as a confidential police informant. *Id.* at 41–42. He suggested to the police that Greer was a worthwhile target, and worked with them to set up the arrest. *Id.* at 27–28.

On November 30, Greer placed several phone calls with McConnell, and the two of them had a meeting during the day where McConnell sold Greer fourteen grams of crack cocaine. Trial Tr. 158. Simultaneously, Martin was attempting to set up a "buy" of approximately sixty-three grams of crack cocaine with McConnell, through Greer. *Id.* at 22. The police detectives testified at trial that this was a fairly standard amount of cocaine to offer in a "buy and bust" operation. *Id.* at 61. McConnell did not know Martin, but Greer convinced McConnell to do a deal for Martin. *Id.* at 159–60. Greer promised to be present as a middleman at the exchange, and vouched that Martin was a bona fide customer. *Id.* Before joining up with Greer to meet McConnell and make the "buy," Martin met with police detectives in order to coordinate the "bust." The detectives placed a wire on Martin. *Id.* at 23. In addition, the police gave Martin hundreds of dollars in marked cash in order to complete the transaction. *Id.*

That evening, Martin and Greer met each other at a gas station. Trial Tr. at 26. They drove off together to meet with McConnell, trailed by police detectives in an unmarked vehicle. *Id.* During the drive, Martin's wire recorded Greer making phone calls to McConnell. *Id.* at 28–29. When they arrived at the agreed-upon rendezvous, Greer and Martin stayed in their car, while McConnell came out to his car and began talking with Greer. *Id.* at 29–30. Greer gave Martin's money to McConnell, and Greer received the crack cocaine from McConnell. *Id.* at 167–68. During the meeting, Greer introduced Martin to McConnell, and laid the foundation for the two of them to deal directly with one another in the future. *Id.* at 36.

Once the transaction was complete, the officers that were tailing Greer and Martin emerged, and they arrested all three men. Trial Tr. at 30–31. The officers found the freshly-purchased crack cocaine on Martin's lap. *Id.* at 101. While conducting pat-downs of Greer and Martin, the police noticed Greer take a plastic bag from his pocket and drop it underneath the car. *Id.* at 101–04, 123. The bag was found to contain more crack cocaine. *Id.* at 105, 123. The police also found marijuana on Greer's person, as well as a portion of the money the police detectives gave Martin. *Id.* at 125–26.

Greer was indicted on one count of aiding and abetting in the distribution of more than fifty grams of cocaine base. Indictment, Jan. 4, 2007, R. 8; *see* 21 U.S.C. § 841(a)(1) ("distributing" a controlled substance); 18 U.S.C. § 2 (aiding and abetting). Under the version of § 841 in force at the time, Greer faced a mandatory minimum sentence of ten years in prison on this charge. *See* 18 U.S.C. § 841(b)(1)(A)(iii) (2006). A jury convicted him on February 21, 2007. Judgment, May 21, 2007, R. 62. Under the federal Sentencing Guidelines ("Guidelines"), Greer was subject to a term of incarceration ranging from 135 to 168 months. Sentencing Hr'g Tr. 34, Aug. 19, 2009, R. No. 88.

At his sentencing, Greer raised two arguments for a sentence below the Guidelines range. First, he argued that the judge had the right to impose a sentence lower than the statutory minimum of ten years because the Government engaged in so-called "sentencing factor manipulation." Sentencing Mem. 5–9, May 14, 2007, R. 59. The district judge refused to consider a sentence below the statutory minimum on this ground because (1) the Sixth Circuit has never recognized the defense,

and (2) even if it were recognized, there was no basis for applying it in Greer's case. Sentencing Hr'g Tr. at 24, 32.

Second, Greer asked the district judge to consider a sentence lower than the recommended range based on a disparity in how the Guidelines treated crack and powder cocaine offenses at the time. Sentencing Hr'g Tr. at 24–28. During the sentencing, the district judge voiced his disapproval of the sentencing ratios for crack and powder cocaine that were in place at the time. *Id.* at 25. He agreed that a downward departure, to the statutory minimum sentence of ten years, was appropriate in this case, and he sentenced Greer accordingly. *Id.* at 34.

While Greer's appeal was pending, Congress amended § 841's minimum sentence provisions. Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372. The FSA raised the amount of crack cocaine needed for a ten-year mandatory minimum sentence from fifty grams to 280 grams. FSA § 2(a)(1), 124 Stat. at 2372. In a supplemental brief, Greer argues that this change should apply, retroactively, to his case.

## II. DISCUSSION

We "review a district court's sentencing determination for reasonableness under 'a deferential abuse-of-discretion standard.'" *United States v. Petrus*, 588 F.3d 347, 351 (6th Cir. 2009) (quoting *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007)). Factual determinations are reviewed for clear error, or a "'definite and firm conviction that a mistake has been committed.'" *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007) (quoting *United States v. McGee*, 494 F.3d 551, 554 (6th Cir. 2007)). Legal questions are reviewed de novo. *Id.*

### A.    Sentencing Manipulation

Greer claims the government engaged in sentencing manipulation by using more than 50 grams of crack cocaine in the "buy and bust" in order to increase his sentence.   Sentencing manipulation is defined as "improper conduct" by the government "that has the effect of increasing the defendant's sentence."  *United States v. Turner*, 569 F.3d 637, 641 (7th Cir. 2009) (internal quotation marks and citation omitted).  At least one circuit recognizes that sentencing manipulation can serve as a means for "piercing" the statutory minimum sentence and imposing a lower-than-required sentence.  *United States v. Fontes*, 415 F.3d 174, 180 (1st Cir. 2005).  But at no time prior to Greer's sentencing has this Court recognized the use of either sentencing manipulation or its cousin, sentencing entrapment, as a mitigating factor in sentencing.  *See United States v. Gardner*, 488 F.3d 700, 716–17 (6th Cir. 2007).  More recently, we have "reaffirmed that the Sixth Circuit does not recognize either" sentencing manipulation or entrapment. *United States v. Guest*, 564 F.3d 777, 781 (6th Cir. 2009).   The consistent holdings of this Court foreclose Greer's argument.

### B.    Crack / Powder Cocaine Sentencing Disparities

At the time of Greer's sentencing, the Guidelines imposed more severe penalties for offenses involving crack cocaine, as opposed to powder cocaine.  Prior to November 2007, the Sentencing Commission treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine for sentencing purposes.  *Kimbrough v. United States*, 552 U.S. 85, 95 n.6 & 96 (2007).   In *Kimbrough*, the Supreme Court ruled that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity" permits imposition of a sentence below the low end of the sentencing range prescribed by the Guidelines.

*Id.* at 110. This was reaffirmed by the Supreme Court in 2009. *Spears v. United States*, 129 S. Ct. 840, 843–44 (2009) ("[D]istrict courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines."). Greer has asserted that the 100:1 crack / powder cocaine ratio should be used to give him a sentence that is not merely below the sentencing range, but below the *statutory minimum*. The district judge rejected Greer's contentions, and we affirm that decision.

*Kimbrough* itself only addressed the issue of downward departures from the Guidelines, and distinguished statutory minimums. *Kimbrough*, 552 U.S. at 105 (clarifying that the federal drug laws do not require sentencing courts to adhere to the 100:1 crack / powder ratio for crack cocaine quantities "other than those that trigger the statutory minimum sentence[ ]"). We have affirmed that *Kimbrough* has no application to statutory minimums. *United States v. Wimbley*, 553 F.3d 455, 462 (6th Cir. 2009) ("*Kimbrough* is inapposite here because [the defendant's] sentence was set by a statutory mandatory minimum, not the advisory Sentencing Guidelines.") (internal quotation marks and citations omitted).

Greer received the lowest possible sentence he could receive under the law, and there is no basis for giving him an even lower sentence. We reject Greer's arguments for "piercing" the statutory minimum.

## C. Retroactive Effect of the Fair Sentencing Act

Retroactive application of a statute like the FSA, which reduces criminal penalties, is the exception, rather than the rule. The federal "Savings Statute" provides that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred

under such statute, unless the repealing Act shall so expressly provide . . . ." 1 U.S.C. § 109. Numerous cases hold that § 109 "bar[s] application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of the offense." *Warden v. Marrero*, 417 U.S. 653, 661 (1974) (denying retroactive application of a statute that would have made the defendant parole-eligible). We recently concluded in *United States v. Carradine*, 621 F.3d 575 (6th Cir. 2010), that a statutory minimum sentence imposed under § 841 prior to the enactment of the FSA cannot be vacated. In that case, the defendant was sentenced to the statutory-minimum sixty months in prison for distributing nineteen grams of crack cocaine in 2005. *Carradine*, 621 F.3d at 580. Under the FSA, the defendant would not have been subject to the statutory minimum. The *Carradine* court, relying on § 109 and *Marrero*, rejected retroactive application of the statute and upheld the sentence imposed on the defendant under the previous version of the statute. *Id.*

*Carradine* leaves little for us to decide. Greer was convicted for actions that took place before the FSA came into effect. The Court has already held that prisoners in his position do not reap the benefits of the FSA. Therefore, we will not remand for resentencing on this ground.

### III. CONCLUSION

The district judge did not err in refusing to consider a sentence for Greer lower than the statutory minimum due to either sentencing manipulation or the 100:1 crack / powder sentencing ratio. In addition, the Fair Sentencing Act lacks retroactive effect to Greer's case. We therefore **AFFIRM** the sentencing decision of the district court.